J. M. STORRAR, Appellant, v. POSTAL TELEGRAPH CABLE CO., Appellee.

**Pleadings:** DEMURRER: AMENDMENT: WAIVER. The filing of an amended and substituted petition in response to a ruling sustaining a demurrer to the original petition does not, when stricken because

pleading the same matters, constitute a waiver of error in sustaining the demurrer.

**Same:** DEMURRER.   Where the petition in an action for failure to transmit a telegraphic order for goods, based upon the thought that the correspondence constituted a contract, was indefinite as to when delivery should have been made, or as to the value of the goods at the time when, by the terms of the order, they were to be delivered, and no basis was therefore laid for estimating the damage sustained, a demurrer was properly sustained.

**Telegraphs:** FAILURE TO TRANSMIT: ACTION FOR DAMAGES: PLEADING: SUFFICIENCY.   Where plaintiff, a retail dealer in fruits, ordered a shipment by telegraph, it was not necessary for him to show as a basis of recovery for failure to transmit and deliver the message, that the telegram if delivered would have constituted a binding contract; but where he alleged that he had taken orders for fruit from his customers, that if his telegram had been transmitted and delivered the sendee, a dealer in fruits, would have filled the order and he would have received the fruit in time to have supplied his customers, and that by failure to receive the same he had suffered damages, a cause of action for failure to transmit and deliver the message was stated.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION to recover damages for a failure to transmit a telegram.—*Reversed.*

*Blake & Wilson,* for appellant.

*Power & Power,* for appellee.

GAYNOR, J.—On the 29th day of July, 1911, the plaintiff filed a petition in the district court of Des Moines county, Iowa, as follows:

Plaintiff, J. M. Storrar, states that he is a resident of Burlington, Iowa, having a branch office at Keokuk, Iowa; that

defendant is a corporation engaged in the business of sending messages by telegraph, both at Keokuk and at Burlington and generally throughout the United States. Plaintiff further states that defendant is indebted to him in the sum of $400, with interest at the rate of 6 per cent. per annum from the 26th day of April, 1910, and for cause of action states: Plaintiff, on April 26, 1910, in the usual course of business delivered to the defendant at Keokuk, Iowa, a written telegram to be transmitted to the Phoenix Packing Company, of San Francisco, Cal.; copy of said telegram being in words and figures as follows: 'Keokuk, Iowa, April 26, 1910. Phoenix Packing Co., San Francisco, Cal. Telegram received. Buyers confirm at prices named therein. J. M. Storrar.' Plaintiff states that the fee for sending said telegram, being charged to the account of the plaintiff, was afterwards paid in the usual course of business. Plaintiff states that said telegram so paid for and so ordered to be transmitted was, on account of the negligence and carelessness of defendant, never transmitted or delivered to the said Phoenix Packing Company of San Francisco, Cal., at any time. Plaintiff states that he performed all actions and acts that were necessary on his part, and did nothing that would in any way contribute to the failure to forward and transmit said message, but plaintiff states that defendant carelessly and negligently failed and neglected to transmit and forward said message, although duly delivered to it for transmission in the usual course of business.

Plaintiff states that the telegram as sent and delivered to defendant for transmission, and as set forth above, arose out of a series of telegrams by and between the Phoenix Packing Company of San Francisco, Cal., and plaintiff herein, as follows (telegram No. 1) : 'April 25, 1910. Phoenix Packing Co., 16 Calif. St., San Francisco, Cal. Book joint car nineteen ten apricots six three quarters standard seven one quarter Choice seven three quarters, extra choice eight one quarter fancy fifty pound boxes one quarter more twenty fives quantity proportions about three quarters Choice one quarter fancy probably no Standards or Extra Choice shipment first week season. J. M. Storrar.'

To which telegram the following reply was received (telegram No. 2) : 'San Francisco, Calif., April 26, 1910. J. M. Storrar, Burlington, Iowa. Referring to your wire of yesterday decline orders. We offer subject to confirmation 50 lb.

boxes apricots, Standard, Choice, Ex. Choice, and Fancy, 7¼-7¾-8¼-8¾-July-August shipment.   50 lb. boxes Yellow Peaches, Standard, Choice, Ex. Choice, and Fancy, 4¾-5-5¼-5¾-August September shipment.'

To which the plaintiff replied as follows (telegram No. 3) : 'Keokuk, Iowa, April 26, 1910.   Phoenix Packing Co., San Francisco, Cal.   Telegram received.   Buyers confirm at prices named therein.   J. M. Storrar.' . Which above telegram never was transmitted or delivered.

Plaintiff alleges that had defendant delivered said above last-mentioned telegram of April 26, 1910, being telegram No. 3, the Phoenix Packing Company would have confirmed the order by booking joint car 1910 apricots at prices stipulated in telegram of April 26, 1910, under conditions as set forth above in telegram No. 1, which car would contain 40,000 pounds of apricots as a minimum, and plaintiff would have been entitled to receive, and the Phoenix Packing Company would have been bound to deliver, at least 40,000 pounds of apricots at prices quoted in telegram No. 2 during the first week of the season of 1910, which would have been on or about the 14th day of July, 1910.   Plaintiff states that subsequent to April 26, 1910, and before he, in the exercise of ordinary diligence and care, discovered that said telegram was not delivered, the market price and value of apricots of like kind and quality advanced one cent per pound over the price at which plaintiff would have been entitled to secure the apricots, had the telegram in question been delivered.   Plaintiff states that because of the failure of defendant to deliver said telegram, the order for apricots which should have been confirmed by said telegram was never confirmed, and because of the advance of the market price of apricots of like kind and quality, before plaintiff's discovery of the failure of delivery, he is damaged in the amount of one cent per pound on minimum car, or 40,000 pounds of apricots. Plaintiff further states that, within 60 days from the time this cause of action accrued, he presented to the company, defendant herein, a claim therefor in writing, notifying said defendant as required by law.

Wherefore, because of the delay of defendant in delivering said message and because of the utter failure to deliver said message as above set forth, plaintiff asks for judgment as above set forth, to wit, one cent per pound on 40,000 pounds

of apricots, and demands judgment against said defendant for said amount, together with interest thereon as above stated and costs of this suit.

To which petition so filed, the defendant filed the following demurrer, which was by the court sustained, and to which the plaintiff duly excepted:

(1) The telegrams set out in the petition do not constitute a contract by and between the plaintiff and the Phoenix Packing Company. (2) The facts stated in the petition do not show that plaintiff has been damaged in the sum claimed, or in any sum or amount whatever. (3) If the telegram of plaintiff, of date April 26, 1910, had been delivered, it would not constitute a contract, as the telegram from the Phoenix Packing Company (to which the plaintiff's telegram was an answer) was not an offer to sell upon the terms indicated, but expressly reserved the right to determine at a subsequent date whether or not it would sell upon the conditions named. (4) If the Phoenix Packing Company had made an unconditional offer to sell upon the terms named in its telegram, plaintiff's telegram was not an acceptance of such offer. (5) If the telegram of the Phoenix Packing Company had been an unconditional offer to sell upon the terms stated, plaintiff's telegram was a rejection of such offer. (6) The allegations of the petition do not show that plaintiff has sustained any loss by the nondelivery of the telegram. (7) The proposition contained in the telegram of the Phoenix Packing Company was for future delivery, and there are no facts alleged showing that the delivery would have been made, or the value of the merchandise at the date when by the telegram of the Phoenix Packing Company the delivery was to have been made, if plaintiff had accepted the proposition.

Thereupon the plaintiff filed an amended and substituted petition, setting out substantially the same facts as contained in the original petition as to the sending of telegram No. 1, the receipt of telegram No. 2, and the delivery to the defendant company of telegram No. 3 for transmission, and the company's failure to transmit telegram No. 3, and in said

amended and substituted petition stated his cause of action as follows:

Said telegram No. 3, being one of a series of telegrams concerning the sale of merchandise, the same in the usual course of trade would have closed the communication by wire, and upon the receipt of the same said Phoenix Packing Company would have booked a joint car of 1910 apricots at prices stipulated in telegram No. 2, of date April 26, 1910, for shipment July-August, as the season might open, and which in 1910 was on or about July 14th, and would have shipped same to plaintiff on or about said date. Defendant never transmitted and never delivered telegram No. 3. If same had been delivered, plaintiff would have received at Burlington, from the Phoenix Packing Company, a joint car load shipped about July 14, 1910, containing 40,000 pounds of 1910 apricots at prices quoted in telegram No. 2; but, because of defendant's failure to transmit and deliver telegram No. 3, the said merchandise and joint car of apricots was never booked nor shipped. With reasonable promptness thereafter, plaintiff was compelled to, and did, purchase other apricots of like grade and quality, and did deliver same to his customers to whom he had contracted to sell and deliver at prices named in telegram No. 2, and in the amount of 23,750 pounds, paying therefore an advance price of one cent per pound, then, to wit, May 9th, 1910, the market price of said merchandise, thereby incurring a loss and damage of $237.50. (2) Plaintiff further alleges that of the remainder of said 40,000 pounds of apricots, to wit, 16,250 pounds, he never received any part thereof, and said apricots at all times after April 26, 1910, were of a value in excess of the price designated in telegram No. 2, and in the usual course of transmission would have reached Burlington in the usual course of transportation soon after July 14, 1910, and would have been at said date of the market value of two and one-half cents per pound in excess of the price designated in telegram No. 3, and the plaintiff could and would have sold the same at a profit of two and one-half cents per pound, to wit, $405.25, and, because of defendant's negligence in not transmitting and delivering telegram No. 3, loss and damage was done to the plaintiff in the sum of $405.25. (3) Plaintiff further states that, within 60 days from the time this cause of action accrued, he presented to the defendant company

herein a claim therefor in writing, notifying said defendant as required by law. Wherefore, because of the delay of defendant in delivering said message and because of the utter failure to deliver said message as above set forth, plaintiff being entirely without fault on his part, plaintiff has been damaged in the sum of $642.75 and demands judgment against said defendant for said amount, together with interest and costs.

To the amended and substituted petition so filed, the defendant filed the following motion, which was by the court sustained, and to which the plaintiff excepted: ''(1) To strike from the files the amended and substituted petition filed by plaintiff on November 9, 1911, and for cause says that the allegations of said petition are irrelevant, redundant, and immaterial. (2) Because a demurrer was sustained by this court to a previous petition, from which ruling no appeal was taken, and the last amendment contains no material allegation that was not incorporated in the first petition.''

Thereupon, plaintiff having elected to stand on his petition, judgment was entered against him for costs, and from this judgment he appeals to this court.

Upon the record so made, the question arises: **(1) Did** the petition filed by plaintiff state a cause of action?

If it did, then the demurrer to this petition was wrongfully sustained, and if the second or substituted petition was a mere repetition of the matters set out in the original petition, as claimed by plaintiff, and the same was stricken by the court for that reason, the plaintiff may fall back upon the error committed by the court, if any, in sustaining the demurrer. That is, the mere filing of an amended or substituted petition, reciting the same matters contained in the original petition to which the demurrer is sustained, does not, when stricken out for that reason, waive the error in sustaining the demurrer.

1. PLEADINGS: demurrer: amendment: waiver.

If, however, the demurrer to the first petition was right-

fully sustained, the question presents itself to the mind: Does the second petition contain any matter which adds to the plaintiff's right of recovery not contained in the original petition and which presents, in itself, a cause of action in favor of the plaintiff? If it does, then the court erred in striking it from the files and in sustaining defendant's motion therefor.

It appears from the record that the demurrer to the first petition was sustained generally; the court not giving a basis for the ruling. It does not appear on which of the several grounds of the demurrer the court stood for its ruling. The same is true as to the motion to strike the second or amended petition. That motion was also sustained generally. We are therefore left in the dark as to the point upon which the court acted in sustaining either the demurrer or the motion. It is apparent that the amended and substituted petition, though stricken from the files, attempted at least to meet some of the objections urged in the demurrer, especially the one designated as the seventh ground, herein set out, being the fifth ground of the amendment to the demurrer.

The first petition seems to be grounded upon the thought that the telegrams created a binding contract between the plaintiff and the Phœnix Packing Company by which the plaintiff became entitled to receive, and the Phœnix Packing Company bound to deliver to the plaintiff, the apricots in question. It is indefinite and uncertain in its statements as to when delivery would have been made under the contract, or as to the value of the merchandise at the date when, by the terms of the telegram, the apricots were to be delivered. In fact, there is a want of basis in the first petition for the estimation of damages, and we think the demurrer was rightfully sustained to this petition.

2. SAME:
demurrer.

The second petition, however, proceeds upon the theory, and the allegations warrant the conclusion if true, that the Phœnix Packing Company would have booked the plaintiff's

order, as made in telegram No. 1, and would have shipped to the plaintiff, as therein requested, the apricots at the prices named in telegram No. 2; and the further fact appears therein, that does not appear in the first petition, that, upon the receipt of telegram No. 2, the plaintiff had entered into a contract to furnish apricots to his customers, and had procured purchasers for the apricots at the prices named in telegram No. 2, and that if the telegram had been sent, he would have been able to fill these orders, but, because of the failure to send the telegram, he was compelled to buy apricots to furnish his customers, at a price in excess of that which he would have been required to pay therefor to the Phœnix Packing Company, and was therefore damaged to the extent of the difference between what he was required to pay for the apricots on the market to fulfill his contract with his customers, and what he would have been required to pay the Phœnix Packing Company had the telegram been sent and the apricots shipped at prices stated in telegram No. 2. These are questions of fact and susceptible to proof. If it should appear upon the trial that, had the telegram been sent by the defendant company to the Phœnix Packing Company, the Phœnix Packing Company would have shipped to the plaintiff, as per his order in the first telegram, the apricots therein named, at the prices named in telegram No. 2, plaintiff would have received them, according to this petition, in time for the market and to fill his contracts with his customers; but, not having received them, he was compelled to go into the market and purchase at a higher price, to fill his contract with his customers. This damage would be clearly traceable to the act of the defendant company in failing to forward the telegram to Phœnix Packing Company, hereinbefore designated as No. 3.

In transactions of this character, the plaintiff is not required to show, as a basis for recovery, that the telegram

delivered for transmission would, if transmitted, make a
binding contract between the sender and
sendee. It is sufficient, if he show that, had
the telegram been sent, the sendee would have
shipped the goods, as per order, and that he
would have received them in time to have met
his contract with his customers, and that a failure to receive
them resulted in his damage.

3. TELEGRAPHS:
failure to
transmit:
action for
damages:
pleading:
sufficiency.

It must be borne in mind, in considering the situation
here, that the Phœnix Packing Company was engaged in the
business of packing and shipping fruit to purchasers in all
parts of the country; that the plaintiff was a retail merchant,
handling fruits of the character offered by the packing com-
pany; that, in the very nature of the thing (a matter not to
be overlooked), the packing company wanted to sell its
fruits; that the plaintiff, having contracts with his customers,
desired to purchase that he might supply, at a profit. If the
telegram had made known to the packing company that plain-
tiff was willing to purchase their wares, at their own prices,
it is not unreasonable to suppose that they would supply his
demand. It presents a case analogous to one engaged in the
retail business desiring to purchase sugar for his trade. He
sends a telegram to a wholesale dealer in sugar, ''Send me
fifty barrels at once.'' The telegram is not sent, and the
sugar does not arrive. Thereafter sugar advances in price.
It is made to appear that, if the telegram had been sent, the
sugar would have been furnished to the plaintiff at its then
price. To supply his customers, he is compelled to purchase
the sugar at the advanced price. He has clearly lost some-
thing for the failure to send the telegram. True, there was
no binding contract between him and the wholesaler; but,
if he can show that this wholesaler would have responded to
his demand and furnished the sugar at the then price, he has
lost, by a failure to transmit the telegram, the difference be-
tween what he would have been required to pay for the sugar

had it been shipped, and what he was in fact required to pay for it by reason of the advance in price.

It is true that the sender of a message, ordering goods for a certain purpose, cannot recover damages resulting from a failure to receive the goods, because of an error in transmission, unless he shows that the order would have been filled if the message had been properly transmitted. This is a question of fact, and this fact the plaintiff has alleged in his petition, and he is entitled to prove it if he can, and there was clearly error in striking his petition from the files.

As bearing upon this question, see *Larsen v. Telegraph Co.,* 150 Iowa, 751, second division of opinion. See, also, *Hise v. Telegraph Co.,* 137 Iowa, 329; *McNeil v. Postal Tel. Co.,* 154 Iowa, 241.

Of course, there are some cases holding to a contrary doctrine, but these cases settle the rule for this state. We think they are right and are content to follow them, and the judgment of the court is therefore *Reversed.*

WEAVER, C. J., and DEEMER and WITHROW, JJ., concur.