BALDWIN & RIGGS, Appellants, v. CHICAGO, R. I. & P. R. Co., Appellee.

CARRIERS: Limitation of Liability—Interstate Shipments—Limitation of Action. A provision in an interstate bill of lading, signed by both carrier and shipper, providing that no suit for the recovery of any claim by virtue of the contract shall be sustainable unless brought within six months next after the cause of action occurs, is reasonable and valid, Sec. 2074, Code, 1897, prohibiting contracts which limit the common law liability of common carriers, now having no application to interstate shipments.

CARRIERS: Limitation of Liability—Interstate Shipments—Written Notice of Loss. A provision in an interstate livestock bill of lading, signed by both carrier and shipper, providing that, as a condition precedent to recovering damages for any injury to or delay in transporting the stock, the shipper shall promptly, and before such stock is removed from the point of destination or mingled with other stock, give the carrier notice in writing of such claim, is a reasonable and valid provision. Whether a provision that such notice shall be given within *one day* after the delivery of the stock at point of destination is valid, *quaere,* but where

the shipper never gave any notice except his notice of suit, commenced two months after the delivery of the stock, *held*, he could not recover.

*Appeal from Van Buren District Court.—F. M. HUNTER, Judge.*

WEDNESDAY, JANUARY 19, 1916.

ACTION to recover damages for injury to cattle and depreciation in value, due to a failure on the part of the company to transport and deliver them at their destination within a reasonable time. Defense interposed, that the action was not brought within the time provided in the contract, and that no notice of the injury or damage was served upon the defendant before said stock was removed from the destination and mingled with other stock, as required by the terms of the contract of shipment or bill of lading. Judgment in the court below for the defendant. Plaintiffs appeal.—*Affirmed.*

*Work•& Irish,* for appellants.

*Sloan & Sloan* and *J. H. Johnson,* for appellee.

GAYNOR, J.—In the month of March, 1912, the plaintiffs delivered to the defendant company at St. Paul, Minnesota, five loads of cattle, to be transported over defendant's lines to certain points in Iowa. Certain carloads were consigned to J. W. Riggs, Douds, Iowa, and certain carloads to J. A. Baldwin at Selma, Iowa. It is claimed by the plaintiffs that the defendant was negligent in transporting said cattle, and that the same were unreasonably delayed in transit and were neglected and uncared for during transportation; that by reason thereof, the cattle were damaged when they arrived at their destination; that two of the cattle were dead and others were rendered worthless, or practically so; that all the cattle were damaged more or less. Upon this alleged negligence, the plaintiffs ask recovery of the defendant in the sum of $589 on the first count of their petition.

The record discloses that, on January 13, 1913, the plain-

tiffs delivered to the defendant company at Selma, Iowa, certain fat cattle to be transported by said company over its lines to the stockyards in Chicago, Illinois. The plain-tiffs claim that the cattle were unreasonably delayed in transit through the negligence of the defendant; that, if said cattle had been transported with reasonable diligence, they would have arrived in Chicago in time for the Wednesday market, January 15th; that they did not arrive at the stockyards until 6:30 P. M., Wednesday, too late for that day's market; that by reason of the delay in transportation, the cattle were depreciated and were bruised and injured by reason of the long confinement, and when delivered were in a weakened, sickened and stunted condition, and their value impaired. For the purposes of this case, we may assume that these allegations are true, and that the plaintiffs suffered damage substantially as claimed by them, and that such damage was the proximate result of defendant's negligence.

The defendant answered plaintiffs' petition, and admits that it received the cattle for transportation to the various stations mentioned by the plaintiffs, but says that, at the time they received the cattle for shipment, the plaintiffs entered into a written contract covering the transportation of the cattle, which, so far as material to this controversy, reads as follows:

"That as a condition precedent to claiming or recovering damages for any loss or injury to or detention of livestock or delay in transportation thereof, covered by this contract, the second party, as soon as he discovers such loss or injury, shall promptly give notice thereof in writing to some general officer, claim agent, or station agent of the first party, or to the agent at destination, or to some general officer of the delivering line, before such stock is removed from the point of shipment, or from the place of destination as the case may be, and before such stock is mingled with other stock; and such written notice shall, in any event, be served within one day after delivery of the stock at its destination, in order that such claim may ·

be fully and fairly investigated. It is agreed that a failure to strictly comply with all the foregoing provisions shall be a bar to the recovery of any and all of such claims."

With the further provision: "That no suit or action against the first party for the recovery of any claim by virtue of this contract, shall be sustainable in any court of law or equity, unless such suit or action be commenced within six months next after the cause of action shall occur; and, should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding."

The contract, with these provisions in it, was signed by both the plaintiff and the defendant company, and constitutes the bill of lading or contract under which the cattle were shipped. At the time that the shipments were made, the company had two tariff rates on cattle—one rate where the shipment was made with a limitation as to the amount of recovery in case of loss; a higher rate where the shipment was made without limitation. These cattle, it appears, were shipped at the lower tariff rate. These tariff rates had been filed with the Interstate Commerce Commission and certified to by the secretary. One of these tariff rates was introduced in evidence and known as the Western Trunk Line Circular, and provided:

"Live Stock—Limitation of Liability. Rates on live stock published in tariffs will apply on shipments made at owner's risk, with limitation of liability on the part of the Railway Company as a common carrier under the terms and conditions of the current live stock contract provided by said company; the contract to be first duly executed in the manner and form provided for therein. On shipments made without limitation of carrier's liability at common law, not less than 150 per cent. of the rate named will be charged, and under this status, shippers will have the choice of executing and accepting the contract for shipments of live stock with or

without limitation of liability, the rates to be made as provided for herein.''

It was shown that this provision in the Western Trunk Line Circular was in effect and applied on the shipments that were made to the Union Stockyards, Chicago, Illinois, as well as to the other shipments. It is conceded that no notice of the alleged injury to the stock was ever given the defendant, prior to the commencement of the action. The action was commenced on the 13th day of March, 1913.

As to the first count of plaintiff's petition, it is clear that if the provision of the contract relied upon was one which, under the law, the parties had a right to enter into, and one that was binding upon both parties, the plaintiffs are not entitled to recover; for it appears that the action was not commenced for nearly a year after the alleged damage, and that no notice was given, as required by the contract.

These were interstate shipments, and therefore governed, not by the laws of this state, but by the acts of Congress and the decisions of the Supreme Court of the United States, and
1. CARRIERS: limitation of liability: interstate shipments: limitation of action.
it follows that Section 2074 of the Code of 1897 does not apply. We are cited by the plaintiffs both to this section and to the case of *Cramer v. Chicago, R. I. & P. R. Co.*, 153 Iowa 103, 111. The *Cramer* case, however, was reversed by the Supreme Court of the United States, 232 U. S. Rep., 490 (58 L. Ed. 697). See *Heilman & Clark v. Chicago & N. W. R. Co.*, reported in 167 Iowa 313.

In *Missouri, Kansas & Texas R. Co. v. Harriman*, 227 U. S. 657 (57 L. Ed. 690), the Supreme Court of the United States had occasion to pass upon the exact question that is here presented, so far as the first count of plaintiffs' petition is concerned. In that case, which went from Missouri, the stipulation in the shipping contract provided that no suit should be brought after the lapse of 90 days after the happening of any loss or damage. The Supreme Court said:

''It is conceded that there are statutes in Missouri, the

state of the making of the contract, and the state in which the loss and damage occurred, and in Texas, the state of the forum, which declare contracts invalid which require the bringing of an action for a carrier's liability in less than the statutory period, and that this action, though started after the lapse of the time fixed by the contract, was brought within the statutory period of both states. The liability sought to be enforced is the liability of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack Amendment of the Hepburn act of June 29, 1906. (Chap. 3591, sec. 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. 1913, sec. 8592]). The validity of any stipulation in such a contract which involves the construction of the statute and the validity of a limitation upon the liability thereby imposed, is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. . . . The liability imposed by the statute is the liability imposed by the . . . special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. (Citing cases.) The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court. Such stipulations have been sustained in insurance policies. (Citing cases.) A stipulation that an express company should not be held liable unless claim was made within ninety days after a loss was held good in *Southern Exp. Co. v. Caldwell*, 21 Wall. 264 (22 L. Ed. 556). Such limitations in bills of lading are very customary and have been upheld in a multitude of cases. (Citing cases.)

The provision requiring suit to be brought within ninety days is not unreasonable."

It follows, therefore, that if 90 days is not an unreasonably short time in which to require actions to be instituted and prosecuted in cases of this kind, six months not only is not unreasonable, but must be held a reasonable restriction upon the right to maintain the action. This case is conclusive on plaintiffs' right to recover on the first count of their petition.

On the second count, involving the right of the plaintiffs to recover for the injury to the fat cattle shipped by them to the Union Stockyards in January, 1913, it appears that this action was brought within six months, so the six months' limitation on the right to maintain the action is not involved in the determination of plaintiffs' rights under this count. It appears, however, that these cattle arrived at the Union Stockyards at about 6:30 P. M. on Wednesday, the 15th, but too late for that day's market; that the market closed at 3 o'clock; that they were placed upon the market the next morning and were sold and passed out of the control of the plaintiff; that the injury to these cattle was discovered by the plaintiff upon their arriving in Chicago; that no notice was given to the company, or to any of the agents of the company mentioned in the contract, at any time prior to the beginning of this action, or any claim filed for damages, or any notice given that the cattle were damaged or injured in transit, as required by the terms of the contract hereinbefore set out.

2. CARRIERS: limitation of liability: interstate shipments: written notice of loss.

We are not prepared to say at this time, nor do we make any pronouncement as to whether or not notice should be given within one day after the delivery of the stock at its destination. We make no pronouncement as to whether that is a reasonable time within which to require the notice to be given under all circumstances; but the provision of the contract requiring the plaintiffs to promptly give notice in writ-

ing to some general officer, claim agent, or station agent of the first party, or agent at destination, or to some general officer of the delivering line, before such stock is removed from the point of shipment or the place of destination, as the case may be, and before such stock is mingled with other stock, is a reasonable provision, and, clearly, the defendant was entitled to notice before these acts took place, and the effect of failure to give such notice was to deprive defendant of an opportunity to examine the cattle and ascertain for itself whether or not the claim for damages was well founded.

This action was not commenced until nearly 60 days after the cattle had been disposed of by the plaintiffs, had passed out of their control, and were no longer subject to inspection by the defendant. This provision, in principle, is analogous to those provisions of the statute which provide for the giving of notice to a city of personal injury, as a condition precedent to the right to maintain an action. We are not without authority on this question. See *Clegg v. St. Louis & S. F. R. Co.*, 203 Fed. 971. In that case, the provision was substantially the same as the one now under consideration, and the court said:

"We are clearly of the opinion that the eleventh provision in the contract above quoted, relative to giving notice, was a valid one, and the failure to give the notice fatal to plaintiff's right to recovery"—citing cases.

In *Kidwell v. Oregon Short Line R. Co.*, 208 Fed. 1, the United States Circuit Court of Appeals had occasion to pass upon a similar question and said:

"A stipulation that notice of a claim for damages be given before the stock was removed or intermingled with other stock, as a condition precedent to recovery, is a reasonable one, and it has been so held by the Supreme Court of the state in which the contract in this case was made"—citing authorities.

In *Southern Express Co. v. Caldwell*, 21 Wall. 264-268 (22 L. Ed. 556), it was held that an agreement that, in case

of failure by the carrier to deliver goods, he shall not be liable unless a claim shall be made by the bailor or the consignee within a specified period, if that period be a reasonable one, is not against the public policy of the law, and is valid.

In that case it is said: "It may be remarked . . . that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is only required to make his claim within 90 days, in season to enable the carrier to ascertain what the facts are, and, having made his claim, he may delay his suit. . . . A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence, and of capacity, which the strictest rules of the common law ever required."

It is further said: "If a bailor may delay giving notice to them of a loss, or making a claim indefinitely, they may not be able to trace the parcels bailed, and to recover them, if accidently missent, or if they have, in fact been properly delivered. With a bailor, the bailment is a single transaction of which he has full knowledge; with the bailee, it is one of a multitude. There is no hardship in requiring the bailor to give notice of the loss, if any, or make a claim for compensation within a reasonable time after he has delivered the parcel to the carrier. There is great hardship in requiring the carrier to account for the parcel long after that time, when he has had no notice of any failure of duty on his part, and when the lapse of time has made it difficult, if not impossible to ascertain the actual facts. For these reasons, such limi-

tations have been held valid in similar contracts, even when they seem to be less reasonable than in the contracts of common carriers.''

A limitation of this character was also held binding upon the parties, and not unreasonable, and not in contravention of the policy of the law, in *Spada v. Pennsylvania R. Co.*, Court of Errors and Appeals of New Jersey, 92 Atl. 379. It seems to us that the only question that can be made is as to the reasonableness of the time fixed in the contract in which the notice is required to be given. In the *Clegg* case, *supra*, 203 Fed. 971, the contract was, in all respects, the same as the contract here under consideration, as to the requirement touching notice, and it was held to be reasonable. In *Missouri, K. & T. R. Co. v. Kirkham*, (Kansas) 65 Pac. 261, the provision in the shipping contract was:

'' 'The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or injury to cattle resulting from carrier's negligence as aforesaid, including delays, he will give notice in writing to the conductor in charge of the train, or the nearest station or freight agent of the carrier on whose line the injuries occur, before said cars leave that carrier's line, or before the cattle are mingled with other cattle, or removed from pens at destination. In his notice he shall state the place and nature of the injuries complained of, to the end that they may be fully and fairly investigated, and said shipper shall, within 30 days after the happening of the injuries complained of, file with some freight or station agent of the carrier on whose line the injury occurred, his claim therefor, giving the amount. Shipper's failure to comply with the requirements of this section shall absolutely defeat and bar any cause of action for any injuries resulting to said cattle as aforesaid. . . . No agent of this company has any authority to waive, modify, or amend any of the provisions of this contract.' . . . No notice or claim of damages was made to the conductor in

charge of the train at Burlington, or to the station agent at said place, until the following day, and until the cattle had been removed from the pens at point of destination.''

The court said: ''Livestock contracts similar in their nature to the one here involved, have received the consideration of this court, and, where fairly entered into by both parties, in the absence of fraud, have been held conclusive and binding upon the parties''—citing cases. ''Hence it must be held that the terms and conditions of this special contract were binding upon these parties, and should have been so declared by the court.''

In *St. Louis, S. F. R. Co. v. Phillips*, (Oklahoma) 87 Pac. 470, the provision in the contract was:

'' 'No carrier shall be responsible for loss or damage of any of the freight shipped, unless it is proved to have occurred during the time of its transit over the particular carrier's line, and of this, notice must be given within 30 hours after the arrival of the same at destination.' ''

It was further provided in the shipping contract or bill of lading: '' 'That as a condition precedent to a recovery for any damages for delay, loss or injury to livestock covered by this contract, the second party will give notice in writing of the claim therefor to some general officer or nearest station agent of the first party, or to the agent at destination, or to some general officer of the delivering line, before such stock is removed from the point of shipment, or from the place of destination, and before such stock is mingled with other stock; such written notification to be served within one day after the delivery of such stock at destination, to the end that such claim shall be fully and fairly investigated' ''; and it was provided that a failure to comply with the provisions of this clause shall be a bar to the recovery of any and all damages.

The court said: ''Now, the proposition presents itself, was this provision of the bill of lading and shipping contract a reasonable one, and one which the law would enforce? The validity of a contract of this nature and of this special pro-

vision requiring notice in writing to be given of the loss or injury within a reasonable time as a condition precedent to the shipper's right of action, has been so repeatedly and often supported by the decisions of the various courts of this country as to become a well-recognized and settled rule of law.''

And it was held that this provision was a valid, binding contract on the plaintiff, and that a failure to comply with it defeated his right to recover.

In the case of *Texas C. R. Co. v. Morris*, 1 White & W. Civ. Cas. Ct. App., Sec. 374, it is said: ''A railroad company may, by special contract, require a shipper of cattle to serve a written notice of a claim for damages, for loss or injury to the cattle while in transit, before the cattle are removed from the place of delivery and mingled with other stock, as a condition precedent to his right to recover for such damages.''

The same was held in *Atchison, T. & S. F. R. Co. v. Crittenden*, (Kansas) 44 Pac. 1000, in which the court, in passing upon a contract similar to the one under consideration, says:

''So far as it required the shipper to give notice in writing of his loss or injury, it is a valid, binding contract. By its terms, Crittenden was compelled to give notice in writing to the company of his claim for loss or injury to said stock before the stock was removed from the place of destination or delivery, and before said stock was mingled with other stock. Failing to comply with the terms of this contract, he cannot recover. . . . These provisions of the contract are just and equitable. The company is entitled to a written notice that the shipper claims damages, so as to permit the company to have a thorough investigation made of the nature of the claim and the condition of the stock, before the stock is removed from its premises, or, before it is mingled with other stock so as to render its identification difficult. . . . The shipper must prove such notice to have been given before he can recover.''

There are other questions discussed by counsel; but, as the provisions of this contract are binding upon the parties

and control their rights, and inasmuch as there was no attempt made on the part of the plaintiff to perform any of these conditions precedent to its right to recover, we must hold, under the authorities herein cited, that the district court was right in directing a verdict for the defendant as it did in this case, and the cause is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and LADD, JJ., concur.