GRETCHEN P. KLOTZ, Appellee, v. WESTERN UNION TELE-
GRAPH COMPANY, Appellant.

TELEGRAPHS AND TELEPHONES: Interstate Message—Limitation on Liability.    The provision of an interstate telegraphic message which limits the liability of the sending company for delay in delivering the message is binding on the sendee.    (See U. S. Comp. St., Sec. 8563 *et seq.,* Act of June 18, 1910.)

**TELEGRAPHS AND TELEPHONES:** Interstate Message—Cummins Act. The act of March 4, 1915 (U. S. Comp. St., Sec. 8592, 8604-a), commonly known as the Cummins Act, providing that any common carrier, railroad or transportation company receiving interstate shipments of property shall be liable for the actual loss caused to the property by the carrier, any receipt or rule to the contrary notwithstanding, does not apply to interstate telegraphic messages.

*Appeal from Louisa District Court.*—OSCAR HALE AND JAMES D. SMYTH, Judges.

JANUARY 14, 1920.

ACTION by a sendee to recover damages for a failure to deliver a telegram promptly. Opinion states the facts. Verdict and judgment for the plaintiff in the court below. Defendant appeals.—*Modified and affirmed.*

*Carroll Bros., Arthur Springer,* and *Miller & Wallingford,* for appellant.

*Molesberry & Reaney,* for appellee.

GAYNOR, J.—This action is brought by the sendee to recover for failure to deliver a telegram within a reasonable time after it was received by the company. The following is a copy of the telegram for the failure to 1. TELEGRAPHS AND TELEPHONES: interstate message: limitation on liability. deliver which within a reasonable time suit is brought:

"Have position for clarionetist with Arcadian Latest Singing Orchestra, 10 weeks tour, starting next Sunday Salary $30 per week solid time. Rehearsals in progress. Can you come first train. Wire answer quick."

This telegram was delivered to the company in Chicago, Illinois, at 10:30 P. M. on June 13, 1915, and, though transmitted to and received by its operator at Columbus Junction at 11 o'clock P. M., was not delivered to the plaintiff

until 9 A. M. on June 14th. If the telegram had been de-livered at once, or within a reasonable time, the plaintiff, by exercising reasonable diligence on her part, might have taken trains for Chicago as follows: 2.19 A. M., 4.13 A. M., and 7.35 A. M., on the morning of June 14th, and could have advised Dunbar whether she would accept or not. It appears that, as soon as she received the telegram, on the morning of the 14th, she wired Dunbar that she would be in Chicago on the 15th. This telegram seems to have been received by Dunbar too late; for, in the meantime, he had employed someone else to take the position offered the plaintiff.

The plaintiff in her petition claims that she would have accepted and secured the position if the telegram had been delivered within a reasonable time. She claims that she lost the position by reason of defendant's negligence in fail-ing to deliver the telegram promptly, and claims damages in the sum of $325.

The defendant filed an answer to plaintiff's claim, deny-ing generally, and alleging that, on the back of the telegram, was a written contract limiting its liability to $50; that it had filed its tariff rates with the Interstate Commerce Com-mission, and these rates had been approved; that its mes-sages were classified therein as messages valued at $50 and messages valued in excess of $50; that its tariff rates were based upon the value of the message so fixed; that, when the value was more than $50, an additional charge was made.

This limitation of liability in the contract was based, and the contract made, on the understanding and agree-ment that the message did not exceed in value the sum fixed, and the charges paid for transmitting it were fixed by the value attached to the message; and the sender of the message fixed the value of the message at $50. The defendant pleaded this contract against the plaintiff as a

partial defense, urging in its answer that the plaintiff, the sendee, was bound by this contract, and its right to recover was limited by it, and urged that in no event could the plaintiff recover more than the value fixed in the contract.

The plaintiff demurred to this contention of the defendant, and the court sustained the demurrer, and submitted the case on the theory that the defendant was liable to the plaintiff, the sendee, for all damages which the plaintiff could show followed as a proximate result of defendant's negligence; thus disregarding the limitation of the contract.

The jury returned a verdict for the plaintiff for $325. Judgment being entered upon the verdict, defendant appeals.

But one question is presented: Is the sendee bound by the value fixed on the message by the sender, and is the limitation on the amount to be recovered for a failure to deliver the telegram within a reasonable time, binding on the sendee?

The Federal government has assumed charge of the field of interstate commerce, and, by the act of Congress approved June 18, 1910 (U. S. Comp. St. Section 8563 et seq.), has assumed charge of interstate commerce by telegraph, and thereby has removed and exempted the same from the field of state regulation or interference. Congress has conferred upon the Interstate Commerce Commission full power over rates, charges, facilities, classifications, and practices of telegraph companies engaged in interstate commerce, and has given to the Interstate Commerce Commission power to approve, alter, or acquiesce in existing rates or classifications. The defendant company filed its tariff rates with the Interstate Commerce Commission, and these had been approved by the Interstate Commerce Commission before, and were in effect at the time the transaction herein took place.

Turning to the telegram, we find, preceding the written portion of the telegram, these words:

"Send the following telegram subject to the terms on the back hereof which are hereby agreed to."

On the back appears:

"All telegrams taken by this company are subject to the following terms."

Among these appear the following:

"In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon, at the time the telegram is offered to the company for transmission, and the additional sum paid or agreed to be paid based on such value."

That the regulation of interstate commerce by telegraph has been taken over and is exclusively within the jurisdiction of the Federal law has been settled by the Supreme Court of the United States. It has been settled by that tribunal that a sender of a telegram is bound by the conditions and limitations in the telegram as to the amount for which the company shall be liable in case of a failure to exercise reasonable care in delivering the telegram. See *Primrose v. Western Union Tel. Co.,* 154 U. S. 1, in which it was held that such a contract was not one exempting the company from liability for its negligence, but merely a reasonable condition approximately adjusting the charge for services rendered to the duty and responsibility exacted for its performance. The doctrine of the *Primrose* case, so far as it affects the question under consideration, has been recently re-affirmed in *Postal Telegraph-Cable Co. v. Warren-Godwin Lbr. Co.,* 251 U. S. 27 (40 Sup. Ct.

Rep. 69). The opinion was written by Chief Justice White. He said:

"In the first place, as it is apparent on the face of the act of 1910 that it was intended to control telegraph companies by the act to regulate commerce, we think it clear that the act of 1910 was designed to and did subject such companies, as to their interstate business, to the rule of equality and uniformity of rates, which it was manifestly· the dominant purpose of the act to regulate commerce to establish, a purpose which would be wholly destroyed if, as held by the court below, the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of divergent, and it may be, conflicting, local laws. In the second place, as, in terms, the act empowered telegraph companies to establish reasonable rates, subject to the control which the act to regulate commerce exerted, it follows that the power thus given, limited, of course, by such control, carried with it the primary authority to provide a rate for unrepeated telegrams, and the right to fix a reasonable limitation of responsibility where such rate was charged, since, as pointed out in the *Primrose* case, the right to contract on such subject was embraced within the grant of the primary rate-making power.     *   *   *   As the act expressly provided that the telegraph, telephone, or cable messages to which it related may be 'classified into day, night, repeated, unrepeated, letter, commercial, press, government and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages,' it would seem unmistakably to draw under the Federal control the very power which the construction given below to the act necessarily excluded from such control. [As to construction given below, see *Warren-Godwin Lbr. Co. v. Postal Telegraph-Cable Co.*, 116 Miss. 660 (77 So. 601)]. Indeed, the conclusive force of this view is made ad-

ditionally cogent when it is considered that, as pointed out by the Interstate Commerce Commission (*Clay County Produce Co. v. Western Union Tel. Co.,* 44 Inter. Com. Rep. 670), from the very inception of the telegraph business, or at least for a period of forty years before 1910, the unrepeated message was one sent under a limited rate, and subject to a limited responsibility, of the character of the one here in contest."

It was there held that that act of Congress was an exertion by Congress of its authority to bring under Federal control the interstate business of telegraph companies, and, therefore, was an occupation of the field by Congress which excluded state action.

Without repeating the reason upon which these decisions rest, we are bound by them. These two decisions hold that the sender of a telegram is bound by the limitation in the telegram as to the amount which he may recover for any dereliction of duty on the part of the company in sending the telegram. So we say that the only matter presented here for our consideration on this point is this: Is the sendee bound to the same extent that the sender is bound?

In the case last cited, Chief Justice White cites with approval *Western Union Tel. Co. v. Bank of Spencer,* 53 Okla. 398; *Haskell I. & S. Co. v. Postal Tel.-Cable Co.,* 114 Me. 277; *Western Union Tel. Co. v. Bilisoly,* 116 Va. 562; *Bailey v. Western Union Tel. Co.,* 97 Kans. 619; *Durre v. Western U. Tel. Co.,* 165 Wis. 190; *Western Union Tel. Co. v. Schade,* 137 Tenn. 214; *Meadows v. Postal Telegraph & Cable Co.,* 173 N. C. 240; *Norris v. Western Union Tel. Co.,* 174 N. C. 92; *Bateman v. Western Union Tel. Co.,* 174 N. C. 97; *Western Union Tel. Co. v. Lee,* 174 Ky. 210; *Western Union Tel. Co. v. Foster,* 224 Mass. 365; *Western Union Tel. Co. v. Hawkins,* 14 Ala. App. 295.

By the same process of reasoning, the Supreme Court of the United States, in *Chicago, R. I. & P. R. Co. v. Cram-*

*er*, 232 U. S. 490, reached the conclusion that the decision of the Supreme Court of this state, sustaining a state statute prohibiting the limitation of liability of interstate carriers, could not be sustained, and held that the liability of carriers in interstate business was superseded by the Federal statute; that, under the Federal statute, carriers had a right to limit their liability for negligence; and that such limitation was binding upon the shipper.

In *Boston & M. R. Co. v. Hooker*, 233 U. S. 97, the Supreme Court of the United States again said that Congress had pre-empted the field of interstate commerce regulation, so far as liability of carriers was concerned. This court, in *Heilman & Clark v. Chicago & N. W. R. Co.*, 167 Iowa 313, said that Section 2074 of the Code does not apply, in so far as it denies the right to common carriers in interstate commerce to limit its liability for negligence. It was said that it cannot avoid liability for negligence, but it may limit the amount of its liability for damages. The liability is thought to be commensurate with the risk assumed and paid for. To the same effect is *Baldwin & Riggs v. Chicago, R. I. & P. R. Co.*, 173 Iowa 524.

In view of the fact that the Supreme Court of the United States has held that, by the Commerce Act, the telegraph and telephone companies are brought under the operation of the Federal law, these decisions affecting common carriers of freight are in point.

In *Gardner v. Western Union Tel. Co.*, 231 Fed. 405, we find a clear exposition of the doctrine herein sought to be stated. The opinion is by Judge Carland, and says:

"Congress has taken possession of the field of interstate commerce by telegraph, and it results that the power of the state to legislate with reference thereto has been suspended. The great necessity that commerce between the states should be free from such interference applies in a marked degree to interstate commerce by telegraph. If the

regulation which is pleaded in bar in this suit should be
held valid in Kansas, and void in Oklahoma, and the illus-
tration may be extended to all the states of the Union,
then the power of the United States to regulate commerce
between states in relation to telegraphic business would
not only be directly interfered with, but destroyed.
\* \* \* We are, therefore, of the opinion that, Congress
having taken possession of the field of interstate commerce
by telegraph, the provision of the Constitution of Oklahoma
relied upon has become inoperative for the purpose of strik-
ing down the regulation in question. Whether the regula-
tion is a reasonable one or not is, in our judgment, a ques-
tion for the Interstate Commerce Commission to deter-
mine."

In *Bailey v. Western Union Tel. Co.*, 97 Kans. 619 (156
Pac. 716), the defendant set up the same defense that it
pleaded here: to wit, that the contract limited recovery
to $50. A demurrer was overruled to this part of the an-
swer, and the plaintiff appealed. The court said:

"Can the plaintiff recover damages other than those
specified in the defendant's answer and in the printed rules
as set out in the exhibit attached thereto? The defendant
argues that Congress has taken exclusive control of inter-
state telegraphic business by the amendatory act of June
18, 1910 (Part 1, 36 U. S. Stat. at L., Ch. 309, pp. 539, 544).
By this act, interstate commerce in telegraph messages is
placed under the control of the interstate commerce com-
mission. Under this act, common carriers of interstate
commerce may limit the amount of the recovery on account
of damage inflicted to the property of a shipper by the car-
rier's negligence, and these limitations have been held
valid and binding" (citing *Kirby v. Union Pac. R. Co.*, 94
Kans. 485 [146 Pac. 1183], and cases there cited; *Donohoo
Horse & Mule Co. v. Missouri, K. & T. R. Co.*, 95 Kans. 681,

683 [149 Pac. 436]; *Ray v. Missouri, K. & T. R. Co.,* 96 Kans. 8 [149 Pac. 397]), and then proceeded to say:

"The rules that justify common carriers of interstate commerce in limiting their liability for their negligence also justify interstate carriers of telegraph messages in limiting their liability for their negligence."

We need not multiply authorities upon this point. It is now well settled that the stipulation between a telegraph company and the sender of a message that the company shall not be liable for mistakes in the transmission or delivery of messages beyond the sum stipulated in the contract, is reasonable and valid.

In *Western Union Tel. Co. v. Hawkins,* 14 Ala. App. 295 (73 So. 973), an action in tort for failure to deliver an interstate telegram sent to the plaintiff, the court said:

"The effect of the Carmack Amendment of June 29, 1906 (Part 1, U. S. 34 Stat. at Large 584), was to withdraw from the states the entire subject of regulation of the interstate carriage of freight and passengers, and to vest it exclusively in the Interstate Commerce Commission. Its primary purpose was to secure uniformity in classification, rates, obligations and liability."

In that case, the judgment was for the plaintiff in the court below. Defendant appealed, and the cause was reversed. The Supreme Court, in reversing the case, said:

"Nor can it be a matter of doubt that the stipulations with respect to the classification of defendant's messages, and the varying charges for their transmission and delivery, according to the liability of defendant for failure therein, are, within the express terms of the amendment, to be dealt with, as to their reasonableness and validity, only by the Interstate Commerce Commission. This means that until such regulations and practices are condemned by the commission, they cannot be prohibited by state laws, nor pronounced invalid by state courts."

In *Western Union Tel. Co. v. Bank of Spencer,* 53 Okla.
398 (156 Pac. 1175), the right of the sendee to recover more
than the amount stipulated in the contract with the sender,
as the same was recorded in the message, was involved. In
the lower court, the sendee of the message sued, and re-
covered substantial damages on account of negligence in
the handling of the telegram. The Supreme Court, on ap-
peal, held that the sendee was bound by the limitation of
liability fixed in the telegram, and could not recover more
than the amount therein stipulated.

In *Western Union Tel. Co. v. Compton,* 114 Ark. 193
(169 S. W. 946), it was held that the sendee was equally
bound with the sender to the stipulations in the contract.
See, also, *Poor v. Western Union Tel. Co.,* 196 Mo. App. 557
(196 S. W. 28), in which the sendee sued. He sustained
actual loss of $712.50. The court, however, held that the
Federal rule governed, and plaintiff was limited to the
amount stipulated in the contract, and permitted him to
recover but the $50 so stipulated.

We are not unmindful of the fact that state courts,
dealing with the subject-matter now under consideration,
have reached different conclusions; but, when the Supreme
Court of the United States has spoken upon and given a
construction to the acts of Congress, the construction given
controls the action of the state courts. When the Supreme
Court says that the Act of 1910 was intended to control
telegraph companies, and when it says that the act em-
powered telegraph companies to establish reasonable rates,
subject to the control which the act to regulate commerce
exerted, and when it says that the power thus given car-
ries with it the authority to provide a rate, and the right to
fix a reasonable limitation of responsibility, bottomed on
the rate, it follows that, when the company proceeds upon
that theory, fixes its rates and fixes the liability for negli-
gence, bottomed on the rate, the liability fixed in the con-

tract is the only liability to which the company can be sub-
jected.

Our attention, however, is challenged to the Cummins
Act of March 4, 1915, which became effectual on June 4.
1915. This act provides:

"That any common carrier, railroad or transportation
company subject to the provisions of the act, receiving prop-
erty from a point in one state or territory or the District of
Columbia, to a point in another state, ter-

2. TELEGRAPHS ritory, the District of Columbia, or from
AND TELE-
PHONES: inter- any point in the United States to a point in
state message:
Cummins Act. an adjacent foreign country shall issue a re-
ceipt, or bill of lading therefor, and shall be
liable to the lawful holder thereof for any loss, damage, or
injury to such property caused by it, * * * and no contract,
receipt, rule, regulation, or other limitation of any char-
acter whatsoever, shall exempt such common carrier, rail-
road, or transportation company from the liability hereby
imposed; and any such common carrier, railroad, or trans-
portation company so receiving property for transportation
* * * shall be liable to the lawful holder of said re-
ceipt or bill of lading * * * whether such receipt or
bill of lading has been issued or not, for the full actual
loss, damage, or injury to such property caused by it or
by any such common carrier, railroad or transportation
company to which such property may be delivered * * *
notwithstanding any limitation of liability or limitation of
the amount of recovery, or representation or agreement as
to value in any such receipt or bill of lading, or in any con-
tract, rule, regulation, or in any tariff filed with the Inter-
state Commerce Commission; and any such limitation,
without respect to the manner or form in which it is sought
to be made, is hereby declared to be unlawful and void;
Provided, however, that, if the goods are hidden from view
by wrapping, boxing or other means, and the carrier is

not notified as to the character of the goods, the carrier may require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated, in which case the Interstate Commerce Commission may establish and maintain rates for transportation, dependent upon the value of the property shipped as specifically stated in writing by the shipper." See Federal Statutes Ann., Supp., 1916, page 124.

It will be noted that the Cummins Amendment relied on was not an amendment to the act of June 18, 1910, but an amendment to the Carmack Amendment of June, 1906, and it will be noted that the Carmack Amendment refers only to the transportation of property, and the Cummins Amendment also refers only to the transportation of property. That it was intended as an amendment to the Carmack Amendment is apparent from the act itself. It is divided into three parts, or paragraphs. The first paragraph contains the enacting clause. The second sets out verbatim the first paragraph of the Carmack Amendment, and then provides that the same shall be amended as herein set out. It was in no sense, therefore, an amendment to the act of June 18, 1910. In the case of *Chicago, R. I. & P. R. Co. v. Maucher*, 248 U. S. 359, (39 Sup. Ct. Rep. 108, 63 L. Ed. 294), the Supreme Court said:

"But the Carmack Amendment deals only with the shipment of property. Its language is so clear as to leave no ground for the contention that Congress intended to deal with the transportation of persons."

In the case of *Merriweather v. Western Union Tel. Co.*, 183 Ky. 710 (210 S. W. 190), it was held that, under the act of June 18, 1910, a telegraph company may, by contract, limit its liability for negligence in failing to deliver an unrepeated interstate message, notwithstanding the

Carmack Amendment, as amended by the Cummins Amendment. In that case, it was said:

"However, we shall confine ourselves to a consideration of the contention of plaintiff that, by the amendments to Carmack Amendment of March 4, 1915 (38 Stat. 1196, Ch. 176), and August 29, 1916 (39 Stat. 528, Ch. 415), known as the first and second Cummins Acts, the rule announced in *Western Union Tel. Co. v. Lee*, 174 Ky. 210 (192 S. W. 70, Ann. Cas. 1918 C 1026), has been changed, and therefore that case is no longer authoritative. It should be noticed first that the *Lee* case was rested upon the act of June, 1910, and not upon the Carmack Amendment, approved June 29, 1906 (34 Stat. 595, Ch. 3591, Sec. 7, Pars. 11, 12 [U. S. Comp. St., Secs. 8604a, 8604aa]), which does not seem to have ever been held to apply to telegraph and telephone companies, notwithstanding it was held in *Adams Express Co. v. Croninger*, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. [N. S.], 257), to occupy the entire field of legislation, and supersede all state rules, laws, and regulations pertaining to interstate commerce; on the contrary, it was held by this court, in the *Lee* case, 'that Congress had not acted upon the subject of interstate messages until the Act of June 18, 1910.' To the same effect, and in addition to the authorities cited in the *Lee* case, see *Cultra v. Western Union Tel. Co.*, 44 Inter. Com. Commission Rep., 673. It would, therefore, seem improbable that Congress, in the Cummins Amendment to the Carmack Amendment, which did not affect telegraph and telephone messages, and referred rather to 'any common carrier, railroad or transportation company receiving property for transportation,' intended to alter the provisions of the act of 1910, which, in explicit terms, regulated interstate messages, and the ability of such common carriers to contract with reference thereto, even though, of course, all these acts treat of interstate commerce, and are amendatory to

the original act of 1887.  In so far as applicable here, the acts of 1906, 1915, and 1916, supra, deal with and refer to the liability of common carriers for losses to property transported; while the act of 1910 refers to and deals with the transmission by common carriers of interstate messages, plainly different classes of interstate carriers and commerce, unless telegraph and telephone messages are property received for transportation.  That the Carmack Amendment, as originally enacted, and as changed by the Cummins Amendment in dealing with carriers' liability, relates only to liability for property losses, is too apparent for argument, since it expressly applies, in both instances, to 'any common carrier, railroad or transportation company receiving property for transportation;' requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one state to a point in another;' makes the initial carrier liable 'for any loss, damage or injury to such property caused by it' or by any common carrier, railroad, or transportation company to which such property may be delivered; and affirmatively declares that no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability imposed.  And, in addition, as finally amended, provides that 'any common carrier, railroad, or transportation company, so receiving property for transportation shall be liable for the full, actual loss, damage or injury to such property caused by it or by such common carrier, etc., to which such property may be delivered,' notwithstanding any limitation of liability or of the right of recovery, however attempted.  It therefore remains only to determine whether or not a message received for transmission is property received for transportation, as contemplated by the Carmack and Cummins Amendments.  That it is not, seems clear, not only from the ordinary meaning of the terms, as apparently recogniz-

ed in Section 15 of the Act of 1910, where the two classes
are separately specified, but as well from the essential dif-
ferences in the character of the services performed and the
rules of law affecting liability in connection therewith, as
pointed out in *Primrose v. Western Union Tel. Co.*, 154 U.
S. 1, 17 (14 Sup. Ct. Rep. 1198, 38 L. Ed. 883), thus: 'The
rule of the common law by which common carriers of goods
are held liable for loss or injury by any cause whatever,
except the act of God or of public enemies, does not ex-
tend even to warehousemen or wharfingers, or to any other
class of bailees, except innkeepers, who, like carriers, have
peculiar opportunities for embezzling the goods or for col-
lusion with thieves. The carrier has the actual and manual
possession of the goods; the identity of the goods which he
receives with those which he delivers can hardly be mistak-
en; their value can be easily estimated, and may be ascer-
tained by inquiry of the consignor, and the carrier's com-
pensation fixed accordingly; and his liability in damages is
measured by the value of the goods.  *  *  * '  We there-
fore conclude that the Cummins Amendments do not apply
to telegraph companies or messages, and do not affect the
rule announced in *Western Union Tel. Co. v. Lee,* supra,
which must be accepted as conclusive upon the question in-
volved here."

In that case, the only question presented on appeal was
whether or not a telegraph company may, by contract, limit
its liability for negligence in failing to deliver an unrepeat-
ed interstate message. The lower court held such a con-
tract valid, plaintiff appealed, and the judgment was af-
firmed.

We are also of the opinion that this act was not in-
tended to apply to telegraphic and telephonic communica-
tions. As said by Justice Gray in *Primrose v. Western Un-
ion Tel. Co.,* supra:

"Telegraph companies are not bailees, in any sense.

They are intrusted with nothing but an order or message, which is not to be carried in the form or characters in which it is received, but is to be translated and transmitted through different symbols by means of electricity, and is peculiarly liable to mistakes. The message cannot be the subject of embezzlement; it is of no intrinsic value; its importance cannot be estimated, except by the sender, and often cannot be disclosed by him without danger of defeating his purpose; it may be wholly valueless, if not forwarded immediately; and the measure of damages, for a failure to transmit or deliver it, has no relation to any value of the message itself, except as such value may be disclosed by the message, or be agreed between the sender and the company."

Quoting further from the opinion of Justice Strong in *Southern Exp. Co. v. Caldwell*, 88 U. S. 556:

"Like common carriers, they cannot contract with their employers for exemption from liability for the consequences of their own negligence. But they may, by such contracts, or by their rules and regulations brought to the knowledge of their employers, limit the measure of their responsibility to a reasonable extent. Whether their rules are reasonable or unreasonable must be determined with reference to public policy, precisely as in the case of a carrier."

Even under the Cummins Act, the right is given to contract as to the value of the thing about to be shipped, and thereby limit the liability, when the value of the thing is not ascertainable, because of concealment at the time of its sending. A telegraph company has no way of knowing the value of a message, and has no way of knowing the extent of liability that may attach to a failure to transmit it at once. The sender is in a better position to know approximately the value of the thing sent, and the damages that may flow from a failure to send it correctly. An agree-

ment between the sender and the company as to the value of the message sent is tolerable, when it serves as a basis both for charge and for liability. The charges are supposed to be commensurate with the risk assumed. So we say that the Cummins Act, which it is claimed was in force at the time this message was sent, does not change the rule in regard to telegraphic and telephonic communications, but is limited, in so far as it affects agreements between the shipper and the company, to those things which have an ascertainable value at the time they are received for shipment, and not to those things the value of which cannot be ascertained by the company, even by the exercise of reasonable care, at the time the contract for transportation is made. So, on the whole record, we are led to the opinion that the district court was wrong in not recognizing the limitations made in the contract, and in instructing the jury that the amount of plaintiff's recovery was not limited at all by the provisions of the contract.

It is urged in argument that proper exceptions have not been preserved, so that the questions here under consideration are not properly before the court. In this contention we cannot agree. The statute has been amended: a fact which seems to have been overlooked by counsel in urging that exceptions to instructions have not been properly preserved.

We are of the opinion that the plaintiff, upon the record, has shown a right to recover something. See *Storrs v. Postal Telegraph Cable Co.*, 162 Iowa 578. The jury fixed the amount of her recovery at $325. Under the holding of this opinion, the amount should not exceed the amount limited in the contract. Since, by the finding of the jury, the damage suffered far exceeds the amount limited in the contract, we are of the opinion that the verdict should be reduced to the amount stipulated in the contract, to wit,

$50. For this amount, with interest, plaintiff is entitled to judgment, and to no more.

As thus modified, the judgment is affirmed. The court will enter judgment in plaintiff's favor, as modified.— *Modified and affirmed.*

WEAVER, C. J., LADD, EVANS, PRESTON, SALINGER, and STEVENS, JJ., concur.