# Wytheville.

NATIONAL COUNCIL, JUNIOR ORDER AMERICAN MECHANICS,
AND OTHERS V. STATE COUNCIL, JUNIOR ORDER UNITED
AMERICAN MECHANICS.

June 15, 1905.

Absent, Cardwell, J.

1. CORPORATIONS—*Charter Powers—Motives of Incorporators.*—The sufficiency
   of the motive inducing corporators to apply for a charter of incorpora-
   tion is immaterial.   The company stands upon its charter rights, and
   must prevail unless they are in conflict with the Constitution of the
   United States or of the State of incorporation.
2. CONSTITUTIONAL LAW—*Doubts as to Constitutionality of Statute.*—A statute
   will not be declared unconstitutional unless its repugnance to the Con-
   stitution be plain and palpable.   If sought to be avoided on the ground
   of unjust and oppressive provisions, or because it is supposed to violate
   the natural, social, or political rights of the citizen, it must be shown
   that such injustice is prohibited, or such rights guaranteed or protected
   by the Constitution; if on the ground that the statute violates the fund-
   amental principles of republican government, it must appear that those
   principles are placed beyond legislative encroachment by the Constitu-
   tion.   Nor are courts at liberty to declare an act void, because in their
   opinion it is opposed to a spirit supposed to pervade the Constitution,
   but not expressed in words.
3. FOREIGN CORPORATIONS—*Exclusion From State.*—A State may exclude al-
   together a foreign corporation from doing business within its limits, or
   exact such security for the performance of its contracts with its citizens
   as it may deem proper, where such foreign corporation is not in the em-
   ployment of the Federal government, nor engaged in interstate or
   foreign commerce.
4. CORPORATIONS—*Benevolent   Associations—Incorporation—Vested   Rights—
   Case in Judgment—Constitutional Law.*—An Act of Assembly incorporat-
   ing a benevolent and patriotic association (which had previously done
   business in the State by comity) and granting to it the exclusive right

to create and organize subordinate bodies, and which is wholly prospective in its operation and does not purport to deal with existing rights of property, is not in conflict with the Constitution of this State or of the United States. The State has the right to give to a corporation created by it for the conduct of such a business the exclusive right to create and organize subordinate bodies.

5. EQUITY—*Jurisdiction—Property Rights—Exclusive Charter Privileges—Foreign Corporations.*—Generally courts of equity protect rights of property only, and leave to courts of law the protection of merely personal rights, but property rights may arise under a charter granted by the Legislature, and these rights are within the pale of protection of a court of equity. . The exclusive right to organize subordinate bodies to raise funds for a benevolent purpose does or may involve rights of property within the protection of a court of equity, and it does not follow that a State may not prohibit a foreign corporation from coming within its borders for this purpose.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree in favor of complainant. Defendants appeal.

*Amended and Affirmed.*

The opinion states the case.

*Charles V. Meredith, J. C. Weckert* and *G. W. Crumpecker,* for the appellants.

*Samuel A. Anderson* and *Frank W. Christian,* for the appellee.

KEITH, P., delivered the opinion of the court.

The bill of appellee avers that the State Council of Virginia, Junior Order United American Mechanics, a corporation, was chartered by act of Assembly in February, 1900; its objects being to maintain and promote the interests of Americans, to assist them in obtaining employment, to encourage them in business, to afford relief to the members and their families in case of accident, sickness or death, and to defray the expenses of their funerals or such other cases of distress as shall be defined by the constitution, by-laws, rules and regulations of the

corporation.   Before its incorporation it existed as an unincor-
porated organization, under the same name, and was subject,
by virtue of the customs of the order, to the control of the Na-
tional Council of the Junior Order of United American Me-
chanics of the United States, in so far as the latter acted within
the scope of its objects, charter, constitution, and laws.

In the year 1869 the State Councils of Pennsylvania, New
Jersey and Delaware, which were benevolent and patriotic or-
ganizations, met and created the National Council, and dele-
gated to it certain rights and powers, within which it should be
regarded and respected as the supreme head of the order.   The
objects of the National Council were, first, to maintain and pro-
mote the interests of Americans, and shield them from the de-
pressing effects of foreign competition; second, to assist Ameri-
cans in obtaining employment; third, to encourage Americans
in business; fourth, to establish a sick and funeral fund; fifth,
to maintain the public school system of the United States of
America, and to prevent sectarian interference therewith, and to
uphold the reading of the Holy Bible therein.   To these ob-
jects, fixed by the charter, and existing also before the incorpo-
ration of the order, there was added in the year 1897, the addi-
tional object—sixth, to establish or erect an orphans' home for
the orphans of deceased members of the order, and to maintain
the same.

The National Council, about the time of its organization in
1869, adopted a constitution and certain general laws for the
promotion of its objects.

The bill then goes on to detail the provisions of the constitu-
tion, especially with reference to its amendment, and sets out
that in disregard of its fundamental law the National Council
had undertaken to engraft upon it certain features, with refer-
ence to insurance, to the regalia of the order, to a national judi-
ciary for the final decision of all matters of controversy arising
in the order, and for a change of representation.   The conten-
tion of complainant is that these changes were not made in

accordance with the mode prescribed by the constitution for its own amendment, and that they are "unconstitutional, illegal, and revolutionary measures"; that they were adopted without the approbation and against the wishes of the councils of Virginia, both State and subordinate, and against the wishes and approbation of at least two-thirds of the membership of the order; and that complainant has exhausted all lawful means within the order to obtain a redress of its grievances, but without success.

On February 17, 1900, the General Assembly of Virginia gave a charter to the State Council of Virginia, which at a special meeting of that Council, called in accordance with the laws of the order, convened in Richmond on March 14, 1900, and by a vote of 86 in the affirmative to 17 in the negative accepted the charter and became an incorporated body.

The following are the salient features of the charter: First, it embraces all of the members of the State Council of Virginia, Junior Order United American Mechanics; second, the State Council is made the supreme head of the order in Virginia; third, it is given full and exclusive authority and jurisdiction to grant charters to subordinate Councils and to make such constitutions, by-laws and rules of the order as it may deem just and proper for the government of subordinate Councils.

The bill states that certain persons who are named and others, unknown, in March, 1901, at Alexandria, Virginia, organized a new State Council of Virginia, by substantially the same name as that of complainant. This new organization denies that the plaintiff is the supreme head of the order in Virginia, and the validity of its charter, and is doing everything in its power to destroy the plaintiff, and to prevent its successful operation under its charter. It is further stated that the new State Council was organized for substantially the same purposes as those for which the complainant was organized and was afterwards chartered, and for the promotion of the objects which the plaintiff declares to be illegal and unconstitutional, and wholly foreign

to the objects of the order; that complainant has adopted a seal, and that the Alexandria organization has adopted substantially the same seal. The prayer of the bill is that the National Council of the Junior Order of United American Mechanics of the United States of North America, E. L. S. Bouton, James R. Mansfield, and a number of other individuals whose names are given, and others described as unknown, may be made parties to the bill; that the Alexandria organization may be declared illegal, and the plaintiff be held valid; and that the defendants may be enjoined from continuing the use of the name State Council of Virginia, Junior Order United American Mechanics of the State of Virginia, etc., and from the use of the seal, and from carrying out the objects for which they were organized; that they may be enjoined from granting charters to subordinate councils and representing themselves to subordinate councils as the head of the order in this State, and from interfering in any way with the pursuance by the complainant of its object and purposes.

To this bill the defendant, the National Council, filed its demurrer and answer, in which the private individuals named in the bill unite. The answer traverses all the material averments of the bill, maintains the legality of the changes made in the objects and constitution of the National Council of which the bill complains, and alleges that the act of the Legislature by which the plaintiff was incorporated is in violation of the Constitution of the United States, in that its effect would be to impair the obligation of a contract, and deprive the defendant of property without due process of law.

We shall not enter into a consideration of the charge made in the bill and denied in the answer, that the several changes in the objects and the constitution of the National Council were not made in conformity with the mode prescribed by the constitution itself for its own amendment, and are therefore void. They constitute the motive which induced the State Council of Virginia to apply to the Legislature and obtain from it a char-

ter, which, if valid is conclusive of this controversy. The sufficiency of the motive inducing the plaintiff to apply for the charter is immaterial. It stands upon its charter rights and must prevail, unless the contention of the defendants, that it is repugnant to some provision of the Constitution of the State, or of the United States, can be maintained.

The rule governing courts in passing upon the constitutionality of a law is no longer to be controverted. A statute is not to be annulled unless its repugnancy to the Constitution be palpable and plain. Upon this all the courts speak with one voice, and none more forcibly than the Supreme Court of the United States.

In *Fletcher* v. *Peck,* 6 Cranch. 128, 3 L. Ed. 162, Chief Justice Marshall said: "Whether a law be void for its repugnancy to the Constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." See 1 Tucker on Constitutions, sec. 184; Cooley on Const. Lim. (7 Ed.), p. 228.

So it has been held that a court will not declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the Constitution. It is true there are some reported cases, in which judges have been understood to intimate a doctrine different from what is here asserted; but it will generally be found on an examination of those cases, that what

is said is rather by way of argument and illustration, to show the unreasonableness of putting upon constitutions such a construction as would permit legislation of the objectionable character then in question, and to induce a more cautious and patient examination of the statute, with a view to discover in it, if possible, some more just and reasonable legislative intent, than as laying down a rule by which courts would be at liberty to limit, according to their own judgment and sense of justice and propriety, the extent of legislative power in directions in which the Constitution had imposed no restraint." Cooley on Const. Lim. (7 Ed.), p. 233.

Nor, says the same author, can the courts declare statutes void "because they appear to the minds of the judges to violate fundamental principles of republican government, unless it shall be found that those principles are placed beyond legislative encroachment by the Constitution. The principles of republican government are not a set of inflexible rules, vital and active in the Constitution, though unexpressed, but they are subject to variation and modification from motives of policy and public necessity; and it is only in those particulars in which experience has demonstrated any departure from the settled practice to work injustice or confusion, that we shall discover an incorporation of them in the Constitution in such form as to make them definite rules of action under all circumstances.    .    .    .

"Nor are the courts at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words." Cooley (7 Ed.), pp. 237 *et seq.*

For, "when the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the Legislature, we cannot declare a limitation under the notion of having discovered something in the spirit of the Constitution which is not even mentioned in the instrument." *People* v. *Fisher,* 24 Wend. 215.

The act which in the case before us we are asked to declare to be an unconstitutional exercise of power, appears in the form of a charter granted to the State Council of the Junior Order of United American Mechanics by the Legislature on the 17th of February, 1900. It declares that certain persons therein named shall constitute a body politic and corporate, giving its name and style, and conferring upon it the powers and attributes ordinarily incident to a corporation. By the third section of this charter it is provided that the said corporation shall have full and exclusive authority and jurisdiction to grant charters to subordinate councils, Junior Order United American Mechanics, in the State of Virginia, with power to revoke the same for cause; to make such constitutions, by-laws and rules of order as said corporation may deem just and proper for the government of said subordinate councils. The charter is prospective in its operation. It does not undertake, as we construe it, to deal with vested rights. It interferes with no right of property. It leaves the whole order of things as it existed with respect to the society known as the Junior Order United American Mechanics unaffected and all rights of persons and property which had been acquired under that organization undisturbed and unaffected, except that it declares that the corporation created by the act shall have full and exclusive authority and jurisdiction to grant charters to subordinate councils in the State of Virginia.

We have been unable to ascertain what contract right is impaired or what provision of the Constitution, either of the United States or of the State of Virginia, is violated by this charter. It is true that prior to its passage the National Council, the appellant in this case, had authority, by permission of the State, to organize subordinate councils and to transact the business of the order within the limits of the Commonwealth; but since the decision of *Paul* v. *Virginia,* 8 Wall. 168, 19 L. Ed. 357, we had supposed that there was no longer any doubt

that a State may exclude a foreign corporation entirely from doing business within its limits, or exact such security for the performance of its contracts with its citizens as in its judgment would best promote the public interest.

In that case the plaintiff in error, as agent of a New York insurance company, was indicted in a State court for issuing a policy without license, as required by the statutes of the State. The validity of the law having been affirmed by the State courts, a writ of error was awarded by the Supreme Court of the United States. The constitutionality of the Virginia statutes was assailed as being in conflict with that clause of the Constitution which declares that the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States, and to the provision that Congress shall have power to regulate commerce among the several States.

In answer to the first contention, Justice Field, speaking for a unanimous court, and reviewing all the decisions beginning with *Bank of Augusta* v. *Earl,* 13 Peters·586, 10· L. Ed. 274, concludes, that "the privileges and immunities secured to citizens of each State in the several States, by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their Constitution and laws by virtue of their being citizens. Special privileges enjoyed by citizens in their own States are not secured in other States by this provision. It was not intended by the provision to give to the laws of one State any operation in other States. They can have no such operation, except by the permission, express or implied, of those States. The special privileges which they confer must, therefore, be enjoyed at home, unless the assent of other States to their enjoyment therein be given. . . . The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in *Bank of Augusta* v. *Earle,* 'It must dwell in the place of its creation and cannot migrate to another sovereignty.' The recognition of its existence even by other

States, and the enforcements of its contracts made therein depend purely upon the comity of those States—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy."

Proceeding to the second objection urged to the validity of the Virginia statute, which was founded upon the commerce clause of the Federal Constitution, Justice Field said: "At the time of the formation of the Constitution a large part of the commerce of the world was carried on by corporations. . . . This state of facts forbids the supposition that it was intended in the grant of power to Congress, to exclude from its control the commerce of corporations. The language of the grant makes no reference to the instrumentalities by which commerce may be carried on; it is general, and includes alike commerce by individuals, partnerships, associations and corporations. There is, therefore, nothing in the fact—that the insurance companies of New York are corporations—to impair the force of the argument of counsel. The defect of the argument lies in the character of their business. Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one State to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts· are not inter-state transactions, though the parties may be domiciled in different States. The policies do not take effect—are not executed contracts—until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do not

constitute a part of the commerce between the States any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce."

"The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the Federal Government, or where its business is strictly commerce, interstate or foreign." *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650.

We think no argument is necessary to show that the appellant is in no sense an agency or in the employment of the Federal Government, or that its business does not in any respect appertain to interstate or foreign commerce.

We are of opinion that the charter granted by the Legislature is in no respect repugnant to the Constitution of the United States, or of the State of Virginia, but is a valid exercise of legislative power. This conclusion is decisive of the case. Upon it the whole controversy hinges, and in answering it we have disposed of every contention made in the record which requires to be answered.

There is one view of the case, however, urged in the oral argument, to which we shall advert. On behalf of appellants it is urged that equity only protects rights of property, and that, in general, it leaves it to the courts of law to protect merely personal rights.

On behalf of appellee, it is claimed that the inhibitions of the Constitution of the United States apply to contracts which involve rights of property. And thereupon counsel for appellants seek to impale their adversary upon the horns of this dilemma. If property rights are involved, the act of the Legislature impairs a contract with respect to them and is void; if property rights are not involved, then a court of equity has no jurisdiction, and appellee was wrongfully in court.

Opinion.

Property rights may arise, indeed may have arisen, under the charter granted by the Legislature, and those rights are within the pale of the protection afforded by a court of equity.    The exclusive authority to organize subordinate councils to raise funds for the relief of members of the order and their families, in case of accident, sickness, or death, to defray the expenses of their funerals, or such other cases of distress as shall be defined by the constitution, by-laws, rules and regulations of the corporation, do or may involve rights of property within the protection of a court of equity; but it does not follow that a State may not prohibit a foreign corporation from coming within its borders for such purposes.

We do not understand the decree complained of to interfere with any vested right of person or property, but in order to put the matter beyond the reach of controversy we shall so amend the decree as to provide that nothing therein contained shall in any wise affect any such right as may have accrued prior to the 17th of February, 1900; and as amended the decree complained of is affirmed.

*Amended and affirmed.*