WESTERN UNION TELEGRAPH COMPANY *v.* SHARP.

Opinion delivered November 15, 1915.

TELEGRAPH COMPANIES—MESSAGE BETWEEN POINTS IN ONE STATE CROSSING STATE LINE IN TRANSMISSION.—Where a telegraph message is sent from one point in a State to another point in the same State, the same will be treated as an intrastate message, regardless of the fact that the State line is crossed in its transmission.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*Geo. H. Fearons, N. B. Scott* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

1. The Arkansas mental anguish statute is void as to interstate messages. 114 Ark. 193, 174 S. W. 232; 115 Ark. 564; 174 S. W. 552.

Where, in the transmission of a message from one point in this State to another point in this State, it becomes necessary, owing to the manner in which

the lines of the telegraph company are laid, to send the message through a relay station in another State, such message is interstate commerce, is an interstate message, and the mental anguish statute does not apply. 122 U. S. 347; 187 U. S. 617; 167 S. W. 96; 87 Ark. 562.

2. The verdict is excessive. 115 Ark. 515; 113 Ark. 545.

*J. R. Wilson,* for appellee.

1. This is not an interstate message. The contract was made in Arkansas for the transmission of a message over lines, and to a point, in this State. The negligence, if any, in tranmission occurred in this State. The company could not evade the statute by changing the routing, and did so at its own peril. 145 U. S. 192; 17 L. R. A. 444; 22 L. R. A. 570; *Id.* 572; 27 *Id.* 843, 844; 100 Va. 459; 104 Va. 240; 203 U. S. 505; 161 S. W. 240; 147 S. W. 424; 7 Cyc. 451; 107 Va. 60; 95 Ind. 12; 100 Tenn. 429; 104 N. E. 771; 153 N. Y. S. 633; 171 S. W. 1114; *Id.* 839.

2. The verdict is not excessive. 110 S. W. 379; 90 Ark. 57; 95 Ark. 214.

McCULLOCH, C. J. This is an action instituted against the Western Union Telegraph Company to recover damages alleged to have been sustained by the plaintiff by reason of mental anguish caused by negligent delay in delivery of a telegram. The plaintiff lived at Warren, Arkansas, and her father, Mr. Dave Shafstall, lived at Vandervoort, Arkansas. Mr. Shafstall died on the afternoon of December 29, 1913, and his wife (plaintiff's step-mother), delivered to the defendant company at Vandervoort a telegram addressed to plaintiff at Warren, Arkansas, informing her of the death of her father. The testimony is sufficient to justify the conclusion that there was delay in delivering the message to the plaintiff at Warren, which deprived her of the privilege of reaching Vandervoort in time to see her father's remains and attend the funeral, and that she suffered considerable mental anguish in consequence thereof.

The only defense urged here is that the transmission of the message constituted interstate commerce by reason

of the fact that it was sent out of the State on its route from Vandervoort to Warren, and it is contended that under the rule announced by this court in other cases there can be no recovery of damages on account of mental anguish when the message is an interstate one. The announcement of that rule was first made in *Western Union Telegraph Co.* v. *Compton*, 114 Ark. 193, and has been followed in a number of other cases. In reaching that conclusion, we followed the Supreme Court of the United States in *Western Union Telegraph Co.* v. *Brown*, 234 U. S. 542. In all of the decisions of this court where we have adhered to the rule, the question involved related to messages sent from an addressor in one State to an addressee in another State, which constituted strictly interstate transactions. We adhere to the rule announced in those cases, but the real question in the present case is whether or not this message constituted an interstate transaction. Witnesses introduced by the defendant testified that this message was sent from Vandervoort to Kansas City, Missouri, and there relayed to St. Louis, and thence to Little Rock, and thence to Warren. The initial operator testified that in sending messages out of Vandervoort the regular relay office was Fort Smith, Arkansas, but that at night messages were usually sent to the relay office which could be most easily reached, and that sometimes messages were sent to Kansas City, and sometimes to Shreveport, Louisiana, to be relayed. He testified that it would have taken longer for the message to be relayed at Fort Smith, and that he sent it to Kansas City in order to avoid delay. There is no evidence in this record that the message could not have been transmitted by a more direct route even than that through Fort Smith, without crossing the State line.

Counsel for defendant make the contention broadly that regardless of the fact that the message could have been sent without crossing State lines, yet the fact that it was sent beyond the borders of the State makes it an interstate transaction which constitutes interstate commerce within the legal meaning of that term. They rely upon the decision of the Supreme Court of the United States

in the case of *Hanley* v. *Kansas City Southern Ry. Co.*, 187 U. S. 617. That case involved the right of the Railroad Commission of this State to fix and enforce rates for transportation of freight between points in Arkansas over a line of railroad which ran partly through another State or territory between those points. The Supreme Court of the United States held that notwithstanding the fact that the rate fixed related to transportation between points on the railroad, both of which were within the State of Arkansas, it constituted interstate commerce because the transportation was partly within and partly without the State. A careful analysis of that decision reveals the fact that the reasons upon which it is based have no application to the present case.

In disposing of the matter, the court said: "The transportation of these goods certainly went outside of Arkansas, and we are of opinion that in its aspect of commerce it was not confined within the State. Suppose that the Indian Territory were a State and should try to regulate such traffic, what would stop it? Certainly not the fiction that the commerce was confined to Arkansas. If it could not interfere, the only reason would be that this was commerce among the States. But if this commerce would have that character as against the State supposed to have been formed out of the Indian Territory, it would have it equally as against the State of Arkansas. If one could not regulate it, the other could not. No one contends that the regulation could be split up according to the jurisdiction of State or Territory over the track, or that both State and Territory may regulate the whole rate. There can be but one rate, fixed by one authority, whether that authority be Arkansas or Congress. * * * But it would be more logical to allow a division according to the jurisdiction over the track than to declare that the subject for regulation is indivisible, yet that the indivisibility does not depend upon the commerce being under the authority of Congress, but upon a fiction which attributes it wholly to Arkansas, although that fiction is quite beyond the power of Arkansas to enforce."

That decision concerned the power of the State to fix rates, and the gist of the decision was that transportation by that route necessarily constituted interstate commerce for the reason that it was beyond the power of the State of Arkansas to enforce a rate of transportation over a line in another State. The court said that by no fiction of the law could it be treated as transportation conducted wholly within the State, and within the State's control.

The substance of that decision was summed up in the more recent decision of the Supreme Court of the United States in the case of *Wilmington Transp. Co.* v. *Railroad Com. of the State of California,* 236 U. S. 151. That case arose over the power of the State of California to regulate transportation between San Pedro, a port on the California mainland, and Avalon, a port on Santa Catalin Island, which is situated 25 or 30 miles out at sea, but forms a part of the same State. It was held that transportation within those two points was a matter which was subject to State regulation, for the reason that notwithstanding the fact that a part of the trip was over the high seas, it was transportation between points wholly within the State. Mr. Justice Hughes, in referring to the *Hanley* case, *supra,* said: ''And the same conclusion has been reached with respect to the fixing of rates for railroad transportation which, while beginning and ending in the same State, passes through the territory of another State. The regulation of such rates can not be 'split up' according to the jurisdiction of the respective States over the track; there must be one rate fixed by one authority.''

Now, the present question does not relate to the matter of fixing rates of interstate transportation where a part of the route is through another State. Neither is there any question here of splitting up the control over the transaction, for the case relates to the transmission of a message from one point in the State to another, and constitutes entirely an intrastate transaction notwithstanding the fact that the company may for its own convenience send it across the State's border. The contract between the parties was to transmit the message from one point

in the State to another, and the facilities were at hand to accomplish that, for aught that appears in this record to the contrary, without crossing the borderlines of the State. But even in a case where it is necessary to cross the borders of the State, it does not follow that that situation characterizes the transaction as an act of interstate commerce. While telegraphic communication constitutes commerce, and where it is a communication between two States, it constitutes interstate commerce within the legal meaning of that term, yet there is no analogy between that means of communication and the transportation of freight over a line of railroad. The Kansas City Southern Railroad had only one line from Fort Smith to Grannis, and the contract necessarily contemplated a performance by crossing the State line and following the route over which the State of Arkansas had no control. If the test be that which is specified in the *Hanley* case, *supra,* then the telegraphic message does not fall within the rule, because there could be no equal right of regulation by each State merely because the message was flashed across its borders along a wire that traversed another State. Certainly it could not be claimed that the other State, through which the message passed, had any right of control over it. The result is the same as if the message had been a wireless message which would have penetrated regions beyond the border of the State. Could it be said that a wireless message intended to be sent from one point in the State to the other constituted interstate commerce merely because it reached beyond the borders of the State? In such a case the character of the transaction would be fixed by the question whether the points of origin and destination were both within the State, or whether one was within, and one was without the State.

The fact that a message traverses a fixed route along a wire which may run across a portion of another State does not alter the application of the principle so as to constitute the transmission of the message an interstate transaction. There is nothing involved in such a service that affords opportunity for divided control, therefore, its

*status* as either an interstate or an intrastate transaction is determined by the circumstance of the service to be performed being a telegraphic message transmitted for an addressor in one State to an addressee in another State, or for the addressor to an addressee in the same State. The control is with the State if the transmission of the message begins and ends in the same State, and in the other event it is with the Congress of the United States.

There are only three cases brought to our attention wherein this precise question is decided. One is the case of *Western Union Telegraph Co.* v. *Taylor* (appellate court of Indiana), 104 N. E. 771, where the court decided, upon facts identical with those, in the present case, that the transmission of the message did not constitute an act of interstate commerce. The opinion in the *Hanley* case, *supra,* was referred to, and it was said: "We do not think that case would control here. There is no showing that the route used by appellant in this case was the only route between Shoals and Evansville, or that it was a more practicable route than any other. Appellant, without direction from appellee, routed the message out of the State in order to get it to Evansville. If appellant can avoid the effect of the penalty statute in this way, such statute would be useless, for with its many lines of wires running to all the States adjoining this one, all messages between points in this State could be routed in a manner to pass through some point out of the State, and thus the statute be avoided, and any and all intrastate messages could be made interstate messages at the option of appellant."

Another case is *Western Union Telegraph Co.* v. *Reynolds,* 100 Va. 459. There the facts were the same as in this case; that is to say, the telegraphic message was sent from one point to another in the same State, but crossed the State line in transmission. In that case, the court said: "Where the initial and terminal points are both in the same State, and the telegram is transmitted over the wires of the same company, and concerns only citizens of

that State, the message is a domestic message, and its character, in that respect, is not altered by the circumstance that the line passes in part over the territory of another State. Nor is it affected by the fact that the company has established a relay office in such other State." That case was decided before the *Hanley* case, *supra*, but in the later case of *Western Union Telegraph Co.* v. *Hughes*, 104 Va. 240, which was decided after the appearance of the Hanley decision, the Virginia court adhered to its former decision, but on a somewhat different ground. In the still later case of *Western Union Telegraph Co.* v. *Bilisoly* (Va.), 82 S. E. 91, the court held that the penalty statute could not be applied in the case of an interstate message. That case related to strictly an interstate message, one that was sent from a point in one State to a point in another—but it does not appear whether the court meant to recede from its position taken in the former cases that a message did not constitute interstate commerce when sent from one point to another in the State merely because the route adopted crossed the State line. The other case is *State of North Carolina* v. *Western Union Telegraph Co.*, 113 N. C. 213, 22 L. R. A. 570, where it was decided that (quoting from the syllabus) "telegraphic messages between points in the same State do not constitute interstate commerce because of the fact that they traverse another State on the route." That case was, in the opinion of the Supreme Court of the United States in the *Hanley* case, *supra*, grouped with a class of decisions which were criticised, but the criticism seems to have been directed only to its application to railroad transportation—the matter then under consideration.

It is sufficient to dispose of this case to confine ourselves to the rule announced by the Indiana court, that the message is not an interstate one unless it appears that the only method of transmission necessarily carried it beyond the lines of the State. But we think the sounder rule is to say that so far as a telegraph message is concerned the right of control is exclusively with the State

where the message is sent from one point to another in the State, regardless of the fact that the State line is crossed, and that such message does not constitute an act of interstate commerce. That is the conclusion which we prefer to announce as the law applicable to this case.

The jury awarded damages in the sum of $375, which is said to be excessive, but we are of the opinion that the testimony in the case warranted a recovery for that sum. The evidence tends to show that the plaintiff could and would have attended the burial of her father if she had not been deprived of that privilege by the negligence of defendant company. The amount of the recovery was not, in our judgment, excessive.

Affirmed.