## Western Union Telegraph Company v. Lee.

(Decided February 23, 1917.)

### Appeal from Graves Circuit Court.

1. Commerce—Regulation.—In regard to those matters relating to commerce which are not of a nature to be affected by locality,

but which necessarily ought to be the same over the whole country, the silence of Congress upon such subject, over which it had jurisdiction, is equivalent to a declaration that in those respects commerce should be free and unregulated by any statutory enactments.

2. Commerce—Regulation—Police Power.—It is not every state law which may incidentally affect interstate commerce and the persons engaged in it, that necessarily constitutes a regulation of commerce within the meaning of the federal constitution. Legislation which is a mere aid to interstate commerce may be enacted by a state, although at the same time it may incidentally affect that commerce, since this is a legitimate exercise, by the state, of its police power.

3. Commerce—Telegraphs and Telephones — Messages. — Telegraph lines extending through different states, are instruments of commerce which are protected by the commerce clause of the federal constitution; and, messages passing over such lines from one state to the other, constitute a portion of commerce itself.

4. Telegraphs and Telephones—Interstate Messages—Failure to Deliver—Penalties.—In the absence of legislation by Congress taking possession of the field of commerce covered by interstate telegraph messages, the states can lawfully provide penalties and a recovery in damages for the negligent failure of a telegraph company to deliver an interstate message.

5. Telegraphs and Telephones—Interstate Commerce By.—By the act of congress approved June 18, 1910 (36 St. Lar. 544, Fed. Sts. Ann. Suppl. 1912, p. 112), Congress took possession of the entire field of interstate commerce by telegraph, and all state laws upon the subject were thereby superseded.

6. Telegraphs and Telephones—Interstate Business — Regulation.— Since the passage of the act of Congress of June 18, 1910 (36 St. Lar. 544, Fed. Sts. Ann. Suppl. 1912, p. 112), superseding state laws upon the subject of interstate commerce by telegraph, the states are without authority to regulate telegraph business of an interstate character, in any manner.

7. Telegraphs and Telephones—Interstate Messages—Classification. —Under the act of Congress of June 18, 1910 (36 St. Lar. 544, Fed. Sts. Ann. Suppl. 1912, p. 112), telegraph companies may classify interstate messages into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and may charge different rates for the different classes.

8. Telegraphs and Telephones—Negligence—Limiting Liability for by Contract.—Since the passage of the act of Congress of June 18, 1910 (36 St. Lar. 544, Fed. Sts. Ann. Suppl. 1912, p. 112), a telegraph company may, by contract, limit its liability for negligence in failing to deliver an unrepeated interstate message.

9. Telegraphs and Telephones—Interstate Message.—A telegraph message sent from Lebanon, Ky., to Mayfield, Ky., but which was

relayed through Nashville, Tenn., en route, was an interstate message.

ROBBINS & ROBBINS, RICHARDS & HARRIS and ALBERT T. BENEDICT for appellant.

LAFE S. PENCE, H. W. RIVES and STANFIELD & STANFIELD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Mike Lee and his family, including his son, M. A. Lee, live near Lebanon. The appellee, Robert E. Lee, who is another son of Mike Lee, lives near Lowe's Cross Roads, in Graves county, about fifteen miles from Mayfield.

Shortly after the death of Mrs. Mike Lee on March 3, 1915, her husband delivered to the appellant at Lebanon, by the hands of M. A. Lee, the following telegram:

"Lebanon, Ky., 5/3/1915.

"Robert Lee,
        Mayfield, R. F. D. No. 1.

"Wife died this morning. Funeral Friday. Answer if coming.

"MIKE LEE."

The message was promptly transmitted from Lebanon to Mayfield by the way of Louisville and Nashville, Tennessee, the usual and the most direct route. After making some ineffectual efforts to find Robert Lee, the appellant's operator at Mayfield placed the message in the post office, directing it to "Robert Lee, Mayfield, Ky., R. F. D. No. 1." It was never delivered. Some two weeks later Robert Lee learned of his mother's death from a newspaper; and, upon calling at the telegraph office, on March 26th, the message was read to him.

In this action brought by Robert Lee for damages for mental anguish suffered by him, there was a verdict and judgment for $1,250.00. The company appeals; and, for a reversal it insists, (1) that since the telegram was sent by the way of Nashville, Tenesee, it constituted interstate commerce; (2) that the interstate commerce act of 1887, as amended by the act of 1910, applied to and controlled the rights of the parties; (3) that under the federal statutes and decisions, mental anguish is not an element of damage, and the stipulations restricting the damages in cases of unrepeated messages, are enforceable; (4) that Robert Lee and Mike Lee could not both

recover upon the same telegram; (5) that the court erred in refusing instructions asked by the appellant, and in admitting incompetent testimony over appellant's objection; and, (6) that the verdict is excessive.

Relying upon the claim that this was a case of interstate commerce and controlled by the federal law, the defendant as a partial defense, further interposed the plea, (7) that the message was an unrepeated message and by the terms and conditions under which it was accepted, the company could not be held liable for mistakes and delays in the transmission or delivery of an unrepeated message beyond the amount received for sending it—in this case forty cents. The answer also set up the further partial defenses, (8) that by the terms of the contract the company should not be liable for mistakes or delays in the transmission or delivery or for the non-delivery of any character of message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars; and (9) that the claim was not presented in writing within 60 days after the telegram was filed with the company for transmission.

The trial court, however, treated the case as one of intrastate commerce, and overruled the partial defenses under section 196 of the state constitution, which prohibits a carrier from contracting to relieve itself from its common law liability. Adams Express Co. v. Walker, 119 Ky. 121, 67 L. R. A. 412; Southern Express Co. v. Fox & Logan, 131 Ky. 257; L. & N. R. R. Co. v. Woodford, 152 Ky. 407.

Is this a case of interstate commerce? And if so, can it be affected, incidentally, by state laws enacted under the police power?

1. In regard to those matters relating to commerce which are not of a nature to be affected by locality, but which necessarily ought to be the same over the whole country, the silence of Congress upon such subject, over which it had unquestioned jurisdiction, is equivalent to a declaration that in those respects commerce should be free and unregulated by any statutory enactments. Welton v. Missouri, 91 U. S. 282; Hall v. De Cuir, 95 U. S. 490. In other words, the matters upon which the silence of Congress is equivalent to affirmative legislation, are national in their character, and such as to fairly require uniformity of regulation upon the subject matter involved affecting all the states alike. Mobile County v. Kimball, 102 U. S. 691. There are, however, other sub-

jects of commerce over which Congress may, but has not assumed jurisdiction, and concerning which the states may act in the exercise of their police power, in the absence of Congressional action.

And, in cases where the commerce is intrastate, the state's power is exclusive. We have, therefore, three classes of cases; (1) those in which the power of the state is exclusive; (2) those in which the power of Congress is exclusive; and, (3) those in which the states may act in the absence of legislation by Congress. Covington & Cin. Bridge Co. v. Kentucky, 154 U. S. 204.

It is not every state law which may incidentally affect interstate commerce and the persons engaged in it, that necessarily constitutes a regulation of commerce within the meaning of the federal constitution. Legislation which is a mere aid to interstate commerce may be enacted by a state in the exercise of its police power, although at the same time it may incidentally affect that commerce itself. Mobile County v. Kimball, 102 U. S. 691. This is a legitimate exercise, by the state, of its police power.

Thus, it has been held that state laws for the regulation of pilots; for quarantine and inspection; for policing harbors; improving navigable channels; regulating wharves, piers, and docks; constructing dams and bridges across the navigable waters of a state; and laws for the establishment of ferries, are not violative of the federal constitution. It is not the existence of the power of Congress to regulate commerce in this class of cases, but the exercise of that power by Congress that will prohibit state action. In this class, state action is permissible, in the absence of Congressional regulations. Sturges v. Crowninshield, 4 Wheat, 122.

On the other hand, a state statute which assumed only to regulate persons engaged in interstate commerce while passing through the particular state, was held void because it, in effect and necessarily, regulated and controlled the conduct of such persons throughout the entire voyage which stretched through several states. Hall v. De Cuir, 95 U. S. 485.

As a general proposition, telegraph lines extending through different states, are instruments of commerce, which are protected by the commerce clause of the federal constitution, and messages passing over such lines from one state to another, constitute a portion of commerce itself. Pensacola Telegraph Co. v. Western Union

Tel. Co., 96 U. S. 1; Western Union Tel. Co. v. Texas, 105 U. S. 460; Western Union Tel. Co. v. Pendleton, 122 U. S. 347; Western Union Tel. Co. v. James, 162 U. S. 654; Western Union Tel. Co. v. Commercial Milling Co., 218 U. S. 406, 36 L. R. A. (N. S.) 220, 21 Am. & Eng. Ann. Cas. 815.

But in the absence of a federal statute assuming to take control of this branch of commerce when it is interstate, there are many cases in which the state regulation is merely incidental and therefore permissible under the police power.

Thus, in Western Union Telegraph Co. v. James, *supra,* decided in 1896, the state of Georgia had provided by statute a penalty of $100.00 for the failure of a telegraph company to promptly deliver a message; and, James sued to recover the penalty and damages for the defendant's failure to deliver a message sent to him at Blakely, Ga., from Eufaula, Ala.

In speaking of Hall v. De Cuir, *supra,* and in sustaining the recovery in the James case, the court in that case said:

"It is seen from this reasoning that the foundation for holding the act void was that it necessarily affected the conduct of the carrier and regulated him in the performance of his duties outside and beyond the limits of the state enacting the law. A provision for the delivery of telegraphic messages arriving at a station within the state is not of the same nature as that statute, and would have no such effect upon the conduct of the telegraph company with regard to the performance of its duties outside of the state."

But in Western Union Telegraph Co. v. Pendleton, 122 U. S. 347, a similar statute of Indiana which provided a penalty for the failure to deliver a message sent from Shelbyville, Indiana, to Ottumwa, Iowa, was declared invalid as a regulation of interstate commerce because it attempted to regulate the delivery of messages in Iowa. It was attempted to sustain this Indiana statute under the police power.

But, in its opinion the court said:

"Whatever authority the state may possess over the transmission and delivery of messages by telegraph companies within her limits, it does not extend to the delivery of messages in other states."

The James case and the Pendleton case well illustrate the application of the rule to telegraph cases, in the ab-

sence of congressional action. The Pendleton case was relied upon for a reversal of the James case; but in pointing out the difference in principle betwen the two cases the court, in the James case, said:

"Which of the classes spoken of in Covington & Cincinnati Bridge Co. v. Kentucky, 154 U. S. 204, includes the statute under review? Is it a mere police regulation, that but incidentally affects commerce, such as Smith v. Alabama, 124 U. S. 465, and which, at any rate, would be valid until Congress should legislate upon the subject; or is it of such a nature, so extensive and natural in character, that it could only be dealt with by Congress? We do not think it is the latter. It is not at all similar in its nature to the case above cited of Hall v. De Cuir, 95 U. S. 485.

"In one sense it affects the transmission of interstate messages, because such transmission is not completed until the message is delivered to the person to whom it is addressed, or reasonable diligence employed to deliver it. But the statute can be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other states. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject it would seem that such a statute must be valid. . . . . So long as Congress is silent upon the subject, we think it is within the power of the state government to enact legislation of the nature of this Georgia statute. It is not a case where the silence of Congress is equivalent to an express enactment. . . . . No attempt is here made to enforce the provisions of the state statute beyond the limits of the state, and no other state could by legislative enactment affect in any degree the duty of the company in relation to the delivery of messages within the limits of Georgia. No confusion, therefore, could be expected in carrying out, within the limits of that state, the provisions of the statute."

Likewise, in Western Union Telegraph Co. v. Commercial Milling Co., 218 U. S. 406, 36 L. R. A. (N. S.) 220, 21 Am. & Eng. Ann. Cas. 815, it was held that interstate commerce was not unconstitutionally regulated by a Michigan statute under which, as construed by the Michigan courts, a telegraph company could not limit

its liability for its negligent failure to deliver a telegram addressed to a person in Missouri.

In that case the Milling Company sent a telegram in August, 1904, from Detroit, Mich., to a broker at Kansas City, Mo. The telegram was promptly sent to the company's relay station at Chicago. What became of it afterwards was not shown; it was not delivered. The defenses were substatially the same as those relied upon in this case, and there was a judgment for $960.00 for the plaintiff. Michigan had enacted a statute in 1893 requiring telegraph companies to transmit all telegrams with impartiality, and in good faith, and making them liable in damages for any mistakes, errors, or delays in the transmission or delivery, or for the non-delivery of any repeated or non-repeated message. It will thus be seen that the case of the milling company under the Michigan statue was the same, in principle, as this case, under section 196 of the Kentucky constitution, which prohibits the company from limiting its common law liability.

In the Milling Company case the defendant relied upon the Pendleton case as it had done in the James case; but in speaking of the Pendleton case, and in comparing it with the James case, the court, in the Milling Company case, said:

"Of the correctness of that conclusion there cannot be any controversy; but there is a manifest difference between the statute of Indiana and the statute of Michigan and their purposes and effects. The former imposed affirmative duties, and regulated the performance of the business of the telegraph company. It besides ignored the requirements or regulations of another state, made its law paramount to the laws of another state, gave an action for damages against the permission of such laws for acts done within its jurisdiction. Such a statute was plainly a regulation of interstate commerce, and exhibited in a conspicuous degree the evils of such interference by a state, and the necessity of one uniform plan of regulation. The statute of Michigan has no such objectionable qualities. It imposes no additional duty. It gives sanction only to an inherent duty. It declares that in the performance of a service public in its nature, that it is a policy of the state that there shall be no contract against negligence. The prohibition of the statute, therefore, entails no burden. It permits no release from that duty in the public service which men in their intercourse

must observe, the duty of observing the degree of care and vigilance which the circumstances justly demand, to avoid injury to another.''

After stating the facts in Chicago, M. & St. P. R. Co. v. Solan, 169 U. S. 133, and in Pennsylvania R. R. Co. v. Hughes, 191 U. S. 477, which presented similar questions of law, the court in the Milling Company case, having in mind the Hughes case, further said:

''There is a difference between that case and this— indeed some contrast. In that case a contract was made in New York which limited the liability of the carrier, the limitation being in accordance with the laws of that state; it was disregarded in Pennsylvania, where the act of negligence occurred, and the law of the latter enforced. In this case the contract limiting liability was made in Michigan, the negligent act occurred in another state, and yet the limitation, it is insisted, is void. In other words, in that case the law of the state was disregarded; in this case it is sought to be enforced. These, however, are but incidental contrasts, in no way affecting the basic principle of the cases, which was that the laws passed upon were exercises of the police power of the states in aid of interstate commerce, and, although incidentally affecting it, did not burden it.''

The court approved the James case and affirmed the judgment of the Michigan court.

To the same effect see W. U. T. Co. v. Crovo, 220 U. S. 364; Vermilye v. W. U. T. Co., 207 Mass. 401; Burgus v. W. U. T. Co., 92 Tex. 125, 71 Am. St. Rep. 833; W. U. Tel. Co. v. Lark, 95 Ga. 806; W. U. Tel. Co. v. Howard, 95 Ga. 194, 30 L. R. A. 158; W. U. Tel. Co. v. Ferris, 103 Ind. 91; W. U. Tel. Co. v. Taylor, 57 Ind. App. 93; W. U. Tel. Co. v. Mellon, 100 Tenn. 420; W. U. Tel. Co. v. Powell, 94 Va. 268; Butner v. W. U. Tel. Co., 2 Okla. 234; North Carolina R. R. Co. v. W. U. Tel. Co., 113 N. C. 213, 22 L R. A. 510; Leavell v. W. U. Tel. Co., 116 N. C. 220, 27 L. R. A. 843, 47 Am. St. Rep. 798; W. U. Tel. Co. v. Reynolds, 100 Va. 459, 93 Am. St. Rep. 971; W. U. Tel. Co. v. Hughes, 104 Va. 204; W. U. Tel. Co. v. White, 113 Va. 421; W. U. Tel. Co. v. Sharp (Ark.) 180 S. W. 504.

It will thus be seen that the theory upon which the courts proceed in upholding state statutes relating to the transmission and delivery of interstate messages as against the objection that they are unconstitutional reg-

ulations of interstate commerce, is that such laws do not impede, harass, or cast any new burden upon interstate commerce, but are passed in aid thereof.

And, in the Milling Company case, *supra,* it was, in substance held, that the Michigan statute was a legitimate exercise of the police power of the state, and that it merely expressed a common law duty, imposed no additional duty, and entailed no burden upon interstate commerce.

City of Louisville v. Wehmhoff, 116 Ky. 847, is to the same effect.

2.   But all of these cases were either decided before, or under facts which occurred before, the passage of the act of Congress approved June 18, 1910, amending the interstate commerce act of 1887; and appellant insists that Congress having thus acted upon the subject of interestate telegrams by taking control of them, all state laws upon the subject have been thereby superseded and the contract limiting the company's liability is enforceable under the federal law. Croninger v. Adams Express Co., 226 U. S. 491, 44 L. R. A. (N. S.) 257; M. K. & T. R. R. Co. v. Harriman Bros., 227 U. S. 657; L. & N. R. R. Co. v. Miller, 156 Ky. 677, 50 L. R. A. (N. S.) 819; Adams Express Co. v. Cook, 162 Ky. 592.   It is apparent, therefore, that if the case is to be controlled by the federal law, as expressed in the act of 1910, and the cases decided under that act, the provisions of the contract limiting the company's liability must be given effect, and the judgment reversed.

The act of Congress approved June 18, 1910, amends section 1 of the Interstate Commerce Act of 1887, as follows:

"Sec. 1.   The provisions of this act shall apply to telegraph, telephone and cable companies (whether wire or wireless) engaged in sending messages from one state, territory, or district of the United States to any other state, territory or district of the United Sates, or to any foreign country—who shall be considered and held to be common carriers within the meaning of this act;

"*Provided,* however, that the provisions of this act shall not apply to the transmission of messages by telephone, telegraph or cable wholly within one state and not transmitted to or from a foreign country from or to any state or territory as aforesaid.

"All charges made for any service rendered or to be rendered in the transportation of passengers or property and for the transmission of messages by telegraph, telephone, or cable, as aforesaid, or in connection therewith, shall be just and reasonable; and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful.

"*Provided,* that messages by telegraph, telephone or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages; and provided further, that nothing in this act shall be construed to prevent telephone, telegraph and cable companies from entering into contracts with common carriers, for the exchange of services." 36 U. S. Stat. Lar. 545; Fed. St. Ann. Suppl. 1912, p. 113.

By this act express authority is given the company to classify messages, and to charge different rates for the different classes, thus fully recognizing the validity of the stipulations of the contract by which appellant seeks to measure its liability. And, there can be little or no doubt that Congress thereby intended to take control of the whole field covering the regulation of interstate telegrams.

In Gardner v. W. U. Tel. Co., 231 Fed. 405, the plaintiff sued in the federal court for delay in delivering an interstate unrepeated message, without having presented his claim within the time required by the printed conditions on the back of the telegram. The plaintiff relied upon section 9, article 3, of the Oklahoma constitution, which invalidated all contracts requiring a demand as a condition precedent to plaintiff's right to recover.

But in holding that the act of Congress had superseded this provision of the Oklahoma constitution, the Circuit Court of Appeals for the Eighth Circuit said:

"Congress has taken possession of the field of interstate commerce by telegraph, and it results that the power of the states to legislate with reference thereto has been suspended. The great necessity that commerce between the states should be free from such interference applies in a marked degree to interstate commerce by telegraph. If the regulation which is pleaded in bar

in this suit should be held valid in Kansas and void in Oklahoma, and the illustration may be extended to all the states of the union, then the power of the United States to regulate commerce between the states in relation to telegraphic business would not only be directly interfered with, but destroyed. . . . . We are, therefore, of the opinion that Congress, having taken possession of the field of interstate commerce by telegraph, the provision of the constitution of Oklahoma relied upon, has become inoperative for the purpose of striking down the regulation in question. Whether the regulation is a reasonable one, or not, is in our judgment, a question for the Interstate Commerce Commission to determine.''

Other decisions rendered since the passage of the act of 1910, holding that the states are without authority to regulate telegraph business of an interstate character, in any manner, are: Haskell Imp. & Seed Co. v. Postal Tel. Cable Co. (Me.), 96 Atl. 210; Williams v. W. U. Tel. Co., 203 Fed. 140; W. U. Tel. Co. v. Bank of Spencer (Okla.), 156 Pac. 1175; W. U. Tel. Co. v. Kaufman (Okla.), 162 Pac. 708; W. U. Tel. Co. v. Bilisoly, 116 Va. 562; W. U. Tel. Co. v. First Nat. Bank, 116 Va. 1109; W. U. Tel. Co. v. Compton (Ark.), 169 S. W. 946; W. U. Tel. Co. v. Johnson, 115 Ark. 564; W. U. Tel. Co. v. Simpson (Ark.), 174 S. W. 232; W. U. Tel. Co. v. Stewart (Ark.), 179 S. W. 813; W. U. Tel. Co. v. Schoonmaker (Tex.), 181 S. W. 264; W. U. Tel. Co. v. Bolling (Va.), 91 S. E. 154; W. U. Tel. Co. v. Mahone (Va.), 91 S. E. 157; W. U. Tel. Co. v. Hawkins (Ala.), Oct. Term, 1916; W. U. Tel. Co. v. Showers (Miss.), 73 So. 276.

It follows, therefore, that the cases decided before the act of 1910 was passed, and relied upon by appellee, are not authoritative in this case if Lee's message was an interstate telegram. Recoveries under State laws prior to 1910 were sustained, only upon the ground that Congress had not then taken control of this branch of interstate commerce, which up to that time might be said to have remained in a twilight zone, subject in some respects to the control of the state or the federal sovereignty, at the pleasure of Congress. The James case —the leading case upon the subject—makes that point very plain by repeated references to the fact that Congress had not then acted upon the subject of interstate telegrams.

3.  Appellee contends, however, that Lee's telegram was not, in fact, an interstate message, and, therefore, the case is not controlled by the act of 1910.  That act does not pretend to affect domestic messages, and could not constitutionally do so.  On the contrary, it expressly exempts from its control "the transmission of messages —wholly within one state," and not transmitted from one state to another state.  It applies only to companies engaged in sending messages "from one state, territory, or district of the United States, to any other state, territory, or district of the United States, or to any foreign country."

From this it is argued that the message sent from Lebanon, Ky., to Mayfield, Ky., is not within the terms of the act of 1910, because it was not sent from one state to another state, although it was transmitted by the way of Nashville, Tenn., in its route.  But the statute in the exempting clause, speaks of messages "transmitted" wholly within one state.

There are cases, most of them, however, decided prior to the passage of the act of 1910, which hold that messages transmitted from one point in a state to another point in the same state, but passing through a portion of another state while en route, are domestic and not interstate telegrams; especially where the most direct route was wholly within the state, or where the company had a route wholly within the state.  North Carolina R. R. Com. v. W. U. Tel. Co., 113 N. C. 213, 22 L. R. A. 570; Leavell v. W. U. Tel. Co., 116 N. C. 220, 27 L. R. A. 843, 47 Am. St. Rep. 798; W. U. Tel. Co. v. Reynolds, 100 Va. 459, 93 Am. St. Rep. 971; W. U. Tel. Co. v. Hughes, 104 Va. 240; W. U. Tel. Co. v. White, 113 Va. 421; W. U. Tel. Co. v. Taylor, 57 Ind. App. 93; W. U. Tel. Co. v. Sharp (Ark.), 180 S. W. 504, are of this class.

And, in Lehigh Valley R. R. Co. v. Pennsylvania, 145 U. S. 192, a tax upon the receipts from railroad shipments between points in Pennsylvania, which passed, in transit, through a portion of New Jersey, was sustained as a tax upon intrastate commerce, following Ratterman v. W. U. Tel. Co., 127 U. S. 411.  Similar rulings were made in Ewing v. City of Leavenworth, 226 U. S. 464, and in State v. U. S. Express Co., 114 Minn. 346.

But, in Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617, as well as in the Lehigh Valley case, *supra,*

a distinction was made between taxation and other forms of state regulation of commerce. In the Hanley case the validity of a freight rate fixed by the Arkansas Railroad Commission and affecting shipments by the railroad between points in Arkansas but passing through Indian Territory, while en route, was questioned.

In holding the rate invalid because it attempted to regulate interstate commerce, the court referred to the Lehigh Valley Railroad case, *supra,* and said:

"That was the case of a tax and was distinguished expressly from an attempt by a state directly to regulate the transportation while outside of its borders. Moreover, the tax 'was determined in respect of receipts for the proportion of the transportation within the state.' Such a proportioned tax has been sustained in the case of commerce admitted to be interstate. Mann v. Grand Trunk R. R. Co., 142 U. S. 217."

This court applied the principle of the Hanley case, in L. & N. R. R. Co. v. Allen, 152 Ky. 145, where we held the carrier could recover from the shipper undercharges upon shipments between points in Kentucky which passed, in transit, through a portion of Tennessee.

In that case, it becoming necessary to determine the character of the shipment, since the carrier could only recover in case the shipment constituted interstate commerce, we cited the Hanley case with approval, and quoted the following language from Pacific Coast S. S. Co. v. Railroad Commissioners, 9 Sawy. 253, 18 Fed. 10:

"To bring the transportation within the control of the state as part of its domestic commerce, the subject transported must be during the entire voyage under the exclusive jurisdiction of the state."

The Hanley case has been repeatedly followed, and has become the leading case upon the subject. See Patterson v. Mo. Pac. Railroad, 77 Kan. 236; Kirby v. Union Pac. R. R., 94 Kan. 485; Hardwick Farmers Elevator Co. v. C., R. I. & P. R. R., 110 Minn. 25; Davis v. Southern Ry. Co., 147 N. C. 68; Mires v. St. Louis & S. F. R. R., 134 Mo. App. 379; Potter v. K. C. So. Ry., 187 Mo. App. 56; Crescent Brewing Co. v. Oregon Short Line R. R., 24 Idaho 106; Traynham v. Charleston & W. C. Ry., 92 S. C. 43; St. Louis, etc. R. R. v. Spriggs, 113 Ark. 118; United States v. Erie R. R., 166 Fed. Rep. 352; M. K. & T. Ry. Co. v. Leibengood, 83 Kan. 25, 28

L. R. A. (N. S.) 985; Milk Producers' Association v. Del. & Lack. R. R. Co., 7 I. C. C. Rep. 158; and W. Va. R. R. Co. v. B. & O. Ry. Co., 26 I. C. C. Rep. 622.

And, since a telegraph company carrying messages occupies the same relation to commerce as a carrier of goods (W. U. Tel. Co. v. Texas, 105 U. S. 460), it would seem to necessarily follow that the principle announced in the Hanley case must be applied here, since the passage of the act of 1910; and that the message sent by Lee constituted interstate commerce. It was so held under precisely similar states of fact in the cases of Kaufman, Bolling, and Mahone, above cited. Messages sent from one point within a state to another like point but passing through a portion of another state while in transit, have always been interstate telegrams. But before Congress took control of the subject of interstate telegrams, state laws could incidentally affect them; since the act of 1910, they cannot. The whole subject of interstate telegrams, including the terms of the contract and the character of the recovery, are now controlled by the federal law; and, as above shown, Lee's telegram was an interstate telegram.

It follows, therefore, that the circuit court erred in sustaining the demurrers to the answer which sought to limit the company's liability under the contract, and in permitting a recovery for mental anguish. W. U. Tel. Co. v. Brown, 234 U. S. 542; W. U. Tel. Co. v. Schoonmaker (Tex.), 181 S. W. 263; Gardner v. W. U. Tel. Co., 231 Fed. 405; W. U. Tel. Co. v. Bank of Spencer, *supra;* Bailey v. W. U. Tel. Co., 97 Kan. 619; W. U. Tel. Co. v. Dant, 42 App. Cas. (D. C.) 398, Ann. Cas. 1916-A 1132, L. R. A. 1915-B 685; L. & N. R. R. Co. v. Miller, 156 Ky. 677.

4. In answer to the plea that both Mike Lee and Robert Lee cannot recover upon the same telegram, it is sufficient to cite Chapman v. W. U. Tel. Co., 90 Ky. 265, holding to the contrary. It was there held that the person to whom a telegram is addressed, as well as the sender, may have an action against the telegraph company to recover damages resulting from the company's delay in delivering the message.

5. The plea that there can be no recovery because the plaintiff failed to present a claim, in writing, within sixty days after the telegram was filed with the company for transmission, cannot avail. The telegram was

sent on March 3, 1915, and this action was filed on May 14, 1915. But plaintiff did not know the telegram had been sent to him until March 26, 1915, and, of course, could not be expected to give notice of something he did not know. The suit was filed within sixty days after plaintiff learned of the company's default, and constituted a sufficient written notice of the plaintiff's claim.

In view of the conclusion we have reached concerning the interstate character of the telegram, under the act of 1910, it becomes unnecessary for us to pass upon the instructions, and the contention that the verdict is excessive.

For the errors indicated, however, the judgment is reversed and the cause remanded for a new trial.