**Bowman & Bull Company, Appellant, v. Postal Telegraph-Cable Company, Appellee.**

**Gen. No. 23,996.**

1. TELEGRAPHS AND TELEPHONES, § 15*—*power of Interstate Commerce Commission to regulate interstate telegrams as exclusive.* Jurisdiction of interstate telegrams has been taken over by Congress by the Act of June 18, 1910, amending the act to regulate commerce, and by virtue thereof the Interstate Commerce Commission has assumed to pass upon the reasonableness of rates and regulations for the same, and hence the regulating power of the State is at an end.

2. TELEGRAPHS AND TELEPHONES, § 21*—*when omission in unrepeated message not gross negligence.* A mistake in an unrepeated telegraph message in omitting the word "three" in "twenty-three," relating to the price per dozen of eggs offered to the receiver of the message by the sender, is mere ordinary negligence and not gross negligence.

3. TELEGRAPHS AND TELEPHONES, § 27*—*when telegraph company not liable to sender for damages due to omission in unrepeated message.* A telegraph company is not liable to the sender of a message for a mistake in omitting the word "three" in "twenty-three," relating to the price per dozen of eggs offered to the receiver of the message by the sender, where the blank used contains provisions that the company shall not be liable for an unrepeated message beyond the amount received for sending the same, and the charges for the message have not been collected.

Appeal from the Municipal Court of Chicago; the Hon. SAMUEL H. TRUDE, Judge, presiding.. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed February 11, 1919.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

SHERIFF, GILBERT & KRIMBILL, for appellant; BARRY GILBERT, of counsel.

LEON A. BEREZNIAK and RANKIN, DITTUS & LESEMANN, for appellee; JACOB E. DITTUS, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

The plaintiff in this action delivered to the defendant company a written message on one of its blanks, to be telegraphed from Chicago to Columbus, Ohio, offering eggs to a customer at twenty-three cents a dozen. As delivered to the party the word "three" was omitted. Other minor errors that have no real bearing on the proposition, or defendant's liability, need not be referred to. In the form thus delivered the offer was accepted and the shipment made before discovery of the error. Settlement was subsequently made between the parties to the telegrams wherein plaintiff took the alleged loss of three cents a dozen, amounting to $360, to recover which this suit was brought. The finding and judgment were for defendant and plaintiff appeals.

The telegraph blank furnished by defendant and used by plaintiff contained a direction on its face that the message be sent without repeating, subject to the terms and conditions on the back thereof, to which the sender agrees. On the back it is stated that the telegraph company shall not be liable for an unrepeated message "beyond the amount received for sending the same," nor for a repeated message beyond a certain amount unless specially insured, etc., and designates the telegram as an "unrepeated" message sent under these and other conditions made binding on the sender.

As defendant never received pay for the telegram and canceled the obligation, the main question is whether the court erred in holding that on these facts plaintiff had no cause of action. We think that ques-

tion has been removed from the field of controversy. State and federal courts have frequently recognized that jurisdiction of interstate telegrams was taken over by Congress by the Act of June 18, 1910, amending the act to regulate commerce, and by virtue thereof the Interstate Commerce Commission has already assumed to pass upon the reasonableness of rates and regulations for the same (see *Cultra v. Western U. Tel. Co.*, 44 I. C. C. 670), and it is settled law that when Congress exercises its authority over contracts involving interstate matters, the regulating power of the State is at an end. (*Adams Exp. Co. v. Croninger*, 226 U. S. 491.) Appellant's contention, therefore, that until further legislation on the subject of interstate telegrams the matter remains subject to the State common law and policies is wholly untenable, in view of the adjudications that Congress has by said act already occupied the field of regulation with respect to them. (*Gardner v. Western U. Tel. Co.*, 231 Fed. 405; *Western U. Tel. Co. v. Lee*, 174 Ky. 210 [15 N. C. C. A. 1], 192 S. W. 70; *Western U. Tel. Co. v. Bilisely*, 116 Va. 562, 82 S. E. 91; *Western U. Tel. Co. v. Hawkins*, — Ala. —, 73 So. 975; *Western U. Tel. Co. v. Petteway*, 21 Ga. App. 725. Most of the decisions relied on by appellant were rendered prior to the passage of said act and were based on the absence at that time of congressional legislation on the subject, but since its passage they are no longer authoritative in matters relating to interstate telegrams. (*Western U. Tel. Co. v. Lee, supra; Haskell Implement & Seed Co. v. Postal Tel.-Cable Co.*, 114 Me. 277; *Meadows v. Postal Telegraph & Cable Co.*, 173 N. C. 240, 91 S. E. 1009.)

Even prior to the passage of said act it was said in *Primrose v. Western U. Tel. Co.*, 154 U. S. 1, that a stipulation between a telegraph company and the sender of a message that the company shall not be liable for mistakes in the transmission or delivery of a message beyond the sum received for sending it, un-

less the sender orders it repeated by being telegraphed back for comparison and pays half that sum in addition, was reasonable and valid. Now the act itself expressly authorizes different classifications of messages—including repeated and unrepeated—and the charge of different rates for the different classes. Referring to repeated and unrepeated messages, it was said in *Western U. Tel. Co. v. Dant,* 42 App. Cas. (D. C.), L. R. A. 1915 B 685:

"They were well known to the art, and, of course, it must be presumed that Congress intended the words to be given their ordinary meaning. * * * Congress, therefore, in express terms, has sanctioned the practice theretofore existing. * * * In enacting this legislation Congress in effect has said to the defendant that it may permit the public to elect the class of services desired, and that the company's liability will be according to the class of service paid for."

In that and also the *Primrose* case, *supra,* a mistake of a similar nature in an unrepeated message was regarded as nothing more than ordinary negligence. We think that the same must be said in the instant case. Considering that mistakes in transmitting messages' are incidental to the nature of the work, we find nothing in the mistakes in the case at bar to indicate a wilful and intentional act, or such absence of care as would constitute gross negligence.

The plaintiff agreed and, as said in the *Dant* case, *supra,* upon both principle and authority was bound by the agreement, that in the event of mistake or delay in transmission or delivery the defendant would not be liable beyond the amount received for sending the message. As before stated, that amount was never paid and the obligation has been canceled. We think the judgment should be affirmed.

*Affirmed.*